IN THE MATTER OF THE LEGITIMATION OF: STANLEY LOCKLEAR BY EARL JONES

No. 157PA84

(Filed 5 September 1985)

**1. Clerks of Court § 1; Bastards § 13— legitimation—jurisdiction of clerk**

A legitimation procedure is in the nature of a special proceeding and is within the jurisdiction of the clerk of superior court. North Carolina Constitution, Art. IV, § 12(3), G.S. 7A-40, G.S. 7A-246, G.S. 49-10.

**2. Bastards § 13— legitimation—putative father**

Petitioner was the putative father of Stanley Locklear within the meaning of G.S. 49-10 where petitioner had lived openly and notoriously in an adulterous relationship with the mother of the child since 1960, had continued to maintain and care for the child born of that relationship, the mother's husband had discontinued living with the mother in 1960, and Stanley Locklear was born in 1965.

**3. Bastards § 11— legitimation—born out of wedlock**

The phrase "born out of wedlock" in G.S. 49-10 refers to the status of the parents of the child in relation to each other, and a child born to parents who

did not acquire the status of wedlock was "born out of wedlock" even though his mother was married to another man. G.S. 49-14.

**4. Bastards § 11— married woman's child—presumption of legitimacy—paternity not in dispute**

The presumption of legitimacy of a child born to a married woman did not require that a man other than the husband who sought to legitimate the child first establish paternity under G.S. 49-14 before proceeding under G.S. 49-10 to legitimate the child because paternity was not in dispute. G.S. 49-15.

**5. Bastards § 13— paternity of married woman's child by another man—procedure**

In an action in which a man other than the husband seeks to establish his paternity of a married woman's child, the child is a necessary party to the action; the married woman's husband is a potentially adverse party on whom summons must be served; the factual issue of paternity, when based on a presumption of legitimacy, must be resolved by a jury; and G.S. 49-10 requires proof beyond a reasonable doubt to establish paternity in rebuttal of the presumption of legitimacy arising from the lawful marriage of the mother to another man. G.S. 49-14, G.S. 1A-1, Rule 17(b)(3) (1983), G.S. 1-273, G.S. 1-393.

Justice BILLINGS did not participate in the consideration or decision of this case.

ON discretionary review of the decision of the Court of Appeals, 66 N.C. App. 722, 311 S.E. 2d 691 (1984), affirming the order entered by *Herring, J.*, at the 10 January 1983 civil session of Superior Court, ROBESON County, in which the dismissal of Petitioner's petition by the Clerk of Superior Court, ROBESON County, was affirmed.

*Lumbee River Legal Services, Inc., by William L. Davis, III, for petitioner-appellant.*

*Rufus L. Edmisten, Attorney General, by Debbie K. Wright, Associate Attorney, for the State.*

*Amicus Curiae, Civil Legal Assistance Clinic, by Lucie E. White, Supervising Attorney.*

FRYE, Justice.

The issue to be decided in this case is whether the clerks of superior court have authority, pursuant to G.S. 49-10, to enter an order legitimating a minor child of a man who alleges that he is the child's natural father, if the child is presumed to be legitimate because he was born to his mother while she was lawfully married to another man. Our answer is yes, with the proviso that the

issue of paternity must be submitted to and decided by a jury after the child and the husband have been properly made parties to the proceeding.

A petition for legitimation was filed on 18 January 1982 by Earl Jones (Petitioner), who claims to be the natural father of Stanley Locklear, a minor, to have Stanley Locklear declared the legitimate child of Petitioner. This petition and related affidavits and motions tended to show that Petitioner and Burline Locklear (mother), the deceased mother of Stanley Locklear, cohabited with each other beginning in approximately 1960. The mother and James O. Locklear, her husband, lived separate and apart since that year and did not thereafter resume their marital relationship. Stanley Locklear was born to Burline Locklear and Petitioner on 26 November 1965. Petitioner, Stanley, and Stanley's mother continued to live together until the time of the mother's death on 10 September 1975.

In a motion filed by Petitioner in this legitimation action, Petitioner also requested that the court make James O. Locklear a party to the action and that he be served by publication and required to respond. Petitioner alleged that the husband's "whereabouts are unknown . . . and could not with due diligence be ascertained." Although the birth certificate contained in the record lists the mother's husband as the child's father, Petitioner contends that he "is the natural father of the . . . minor child and acknowledges paternity of the said minor child . . . ." Furthermore, the facts alleged indicate that the minor child has been supported and maintained by Petitioner and has been living, for the past several years, with him.

On 26 January 1982, the Clerk of Superior Court, Robeson County, dismissed the petition for legitimation, which was filed pursuant to G.S. 49-10, et seq., because "it appears to the Court that at the time Stanley Locklear was born that his mother, Burline Locklear, was married to James O. Locklear; that Clerk of Superior Court is without jurisdiction to hear this matter because the minor child, Stanley Locklear, is presumed to be the legitimate child of James O. Locklear and Burline Locklear." Petitioner gave timely notice of appeal from the clerk's ruling. On 10 January 1983, the trial court entered an order affirming the clerk's dismissal of Petitioner's petition. From this order, Peti-

tioner again appealed, this time to the Court of Appeals. That court affirmed the decision of the superior court. Thereafter, Petitioner filed a petition for discretionary review pursuant to G.S. 7A-31 with this Court, which was allowed.

I.

G.S. 49-10, the statute at the heart of this controversy, provides:

> The putative father of any child born out of wedlock, whether such father resides in North Carolina or not, may apply by a verified written petition, filed in a special proceeding in the superior court of the county in which the putative father resides or in the superior court of the county in which the child resides, praying that such child be declared legitimate. The mother, if living, and the child shall be necessary parties to the proceeding, and the full names of the father, mother and the child shall be set out in the petition. A certified copy of a certificate of birth of the child shall be attached to the petition. If it appears to the court that the petitioner is the father of the child, the court may thereupon declare and pronounce the child legitimated; and the full names of the father, mother and the child shall be set out in the court order decreeing legitimation of the child. The clerk of the court shall record the order in the record of orders and decrees and it shall be cross-indexed under the name of the father as plaintiff or petitioner on the plaintiff's side of the cross-index, and under the name of the mother, and the child as defendants or respondents on the defendants' side of the cross-index. (Code, s. 39; Rev., s. 263; C.S., s. 277; 1947, c. 663, s. 1; 1971, c. 154; 1977, c. 83, s. 1.)

The Court of Appeals, without citation of authority, declared: "It is clear that the Clerk of Superior Court is without authority pursuant to N.C. Gen. Stat. Sec. 49-10 to enter an order legitimating an already-legitimate child." *In re Locklear*, 66 N.C. App. 722, 723, 311 S.E. 2d 691, 692 (1984). That court also placed emphasis on the phrase, "born out of wedlock," contained in G.S. 49-10, without actually offering an explanation regarding its significance to that court's holding. We presume the Court of Appeals interpreted the phrase to mean that a child born to a married woman is not "born out of wedlock." For reasons to be

discussed *infra*, we disagree with that court's reasoning and conclusion.

A.

[1] The jurisdiction of the clerk of superior court is governed by our State constitution which provides:

Except as otherwise provided by the General Assembly, the Superior Court shall have original general jurisdiction throughout the State. The Clerks of Superior Court shall have such jurisdiction and powers as the General Assembly shall prescribe by general law uniformly applicable in every county of the State.

N.C. Const. Art. IV, § 12(3).

Thus, the clerk's subject matter jurisdiction can only be conferred upon him by statute. *Pruden v. Kreemer*, 262 N.C. 212, 136 S.E. 2d 604 (1964). G.S. 7A-40 confers certain judicial powers upon the clerk:

The Superior Court Division of the General Court of Justice consists of the several superior courts of the State. The clerk of superior court . . . in the exercise of other judicial powers conferred upon him by law in respect of special proceedings . . . is a judicial officer of the Superior Court Division and not a separate court.

This statute confers judicial power in special proceedings upon the clerk. Furthermore, G.S. 7A-246 provides:

The superior court division is the proper division, without regard to the amount in controversy, for the hearing and trial of all special proceedings except proceedings under the Protection of the Abused or Neglected Elderly Act (Chapter 108, Article 4, of the General Statutes), except proceedings for involuntary commitment to treatment facilities (Chapter 122, Article 5A, of the General Statutes) and of all proceedings involving the appointment of guardians and the administration by legal guardians and trustees of express trusts of the estate of their wards and beneficiaries, according to the practice and procedure provided by law for the particular proceeding.

The statute in question, G.S. 49-10, specifically identifies the legitimation procedure as "a special proceeding in the superior court of the county in which the putative father resides . . . ." Thus, this procedure, in the nature of a special proceeding, is within the jurisdictional purview of the clerk of superior court.

## B.

[2] Having decided that the statute vests the clerks with jurisdiction and power in a special proceeding pursuant to G.S. 49-10, we must next interpret certain phrases contained in the statute to determine whether Petitioner can pursue such proceeding. The statute states that "[t]he putative father of any child born out of wedlock" may institute such a legitimation action in a special proceeding. Thus, our task is to decide whether Petitioner may be a "putative father" and whether Stanley Locklear may be a child "born out of wedlock" as those terms are used in G.S. 49-10. The State argues in its brief that the word "putative" contained within G.S. 49-10 should be interpreted to mean "commonly accepted or supposed," or "assumed to exist." Webster's New Collegiate Dictionary (1973). The State contends that "Petitioner cannot say his paternity is 'commonly accepted' or 'assumed to exist' because the child's mother was lawfully married to a third person." This argument misses the mark.

Assuming that the proffered definition of "putative" is correct, it would certainly appear that Petitioner, who had lived openly and notoriously in an adulterous relationship with the mother of the child since 1960, continuing to maintain and care for the child born of that relationship, would most likely be the "commonly accepted or supposed" father of the child. In fact, it certainly seems more reasonable to conclude that Petitioner is the "putative father" rather than the mother's husband who discontinued living with the mother in 1960, years before the child was born. Therefore, the facts alleged in this case indicate that Petitioner is the putative father of the minor child.

[3] Qualifying as the putative father alone, however, does not enable Petitioner to bring a legitimation proceeding pursuant to G.S. 49-10. He must be the putative father of "a child born out of wedlock." Therefore, we must next determine whether the phrase, "born out of wedlock," which is contained within the

statute, in some way divests the clerk of jurisdiction and fore-closes Petitioner's action in cases like the instant one.

The State in its brief does not offer any argument concerning the correct interpretation of the phrase. However, Petitioner and amicus have included such arguments in their briefs. Petitioner urges this Court to adopt the interpretation placed upon the same phrase, although within the context of G.S. 49-14, by the Court of Appeals in *Wright v. Gann*, 27 N.C. App. 45, 217 S.E. 2d 761, *cert. denied*, 288 N.C. 513, 219 S.E. 2d 348 (1975). The plaintiff in *Wright*, a minor child, sought to establish paternity and obtain support pursuant to G.S. 49-14. Plaintiff alleged that defendant was his father, but defendant denied paternity, contending that plaintiff was born while plaintiff's mother was married to another man. Defendant argued, *inter alia*, that plaintiff could not bring his action pursuant to G.S. 49-14 "because the statute applies only to children born to single women." *Id.* at 47, 217 S.E. 2d at 763. Since plaintiff's mother was married to another man at the time plaintiff was born, defendant maintained that plaintiff was not "born out of wedlock."

The Court of Appeals in that case interpreted the phrase con-tained within G.S. 49-14, identical to the phrase contained in G.S. 49-10, "as referring to the status of the child and not to the status of the mother." *Id.* Thus, the court concluded that the illegitimate child, plaintiff in that case, would not be precluded from bringing a paternity action for support simply because his mother was married to another man at the time of his conception and birth. In the case *sub judice*, the Court of Appeals rejected this interpreta-tion of the phrase by stating, "Suffice it to say that neither case nor statute has application in the present case." *In re Locklear*, 66 N.C. App. at 723, 311 S.E. 2d at 692.

Our research indicates that the phrase, "born out of wedlock," should refer "to the status of the parents of the child in relation to each other." *Pursley v. Hisch*, 119 Ind. App. 232, 235, 85 N.E. 2d 270, 271 (1949). "A child born to a married woman, but begotten by one other than her husband, is a child 'born out of wedlock' . . . ." *Id.* citing *State of North Dakota v. Coliton*, 73 N.D. 582, 17 N.W. 2d 546 (1945). This same interpretation of the phrase is also consistent with the position taken by the Uniform Act on Paternity, § 1, 9A U.L.A. 626 (1979) (act withdrawn 1973),

which states, "A child born out of wedlock includes a child born to a married woman by a man other than her husband." Finally, the Uniform Illegitimacy Act of 1922, § 1, 9 U.L.A. 391 (1942) (act withdrawn 1960) interprets the term "wedlock" as referring "to the status of the parents of the child in relation to one another." S. Schatkin, *I. Disputed Paternity Proceedings* § 1.01, at 1-2 (rev. ed. 1984). The alleged parents of Stanley Locklear, Petitioner herein and Stanley's mother, in their relation to one another, did not acquire the status of wedlock. Thus, the minor child was "born out of wedlock," although his mother was married to another man, not his natural father.

II.

[4]　Closely aligned with the State's earlier argument that Petitioner should not be considered the "putative father" is an additional argument that Petitioner cannot be the "putative father" of the minor child "until he rebuts the presumption recognized in *Eubanks*, thereby making a legitimate child illegitimate." Essentially, the State maintains that "N.C.G.S. § 49-10 only authorizes the clerk to declare an illegitimate child legitimate . . . . Here, the clerk has no authority under N.C.G.S. § 49-10 to declare as illegitimate a child who is presumed to be legitimate.

In *Eubanks v. Eubanks*, 273 N.C. 189, 159 S.E. 2d 562 (1968), this Court stated, "When a child is born in wedlock, the law presumes it to be legitimate, and this presumption can be rebutted only by facts and circumstances which show that the husband could not have been the father, as that he was impotent or could not have had access to his wife." *Id.* at 197, 159 S.E. 2d at 568. This rebuttable presumption of legitimacy of a child born to a married woman "is one of great antiquity, and, doubtless to avoid the serious disabilities attaching to the status of illegitimacy, was applied . . . ." 10 Am. Jur. 2d *Bastards* § 11, at 852 (1963). The presumption is universally recognized and considered one of the strongest known to the law. *Id.* However, the use of this presumption is normally applied in cases where paternity is denied by the alleged father, not readily admitted as in the present case.

The present action is not against a man who is denying paternity. At this point in the proceedings, in fact, there is no party to the proceeding disputing the paternity of the married woman's child. If paternity were being disputed in this case, "[a] married

woman may [be] found to have given birth to a 'child out of wed-lock,' provided the presumption of legitimacy is rebutted." S. Schatkin, *supra* § 1.03, at 1-9. Instead, here we have a proceeding instituted by a man who is admitting his paternity, not seeking to avoid it. Therefore, we do not think the rebuttable presumption of legitimacy should be employed in this proceeding pursuant to G.S. 49-10 in the manner advocated by the State.

In its conclusion to this argument, the State contends that the appropriate procedure for a petitioner in this situation, when legitimacy is presumed, is to first establish paternity pursuant to G.S. 49-14, then proceed under G.S. 49-10 to legitimate the child. This argument is illogical. If Petitioner were prevented from pro-ceeding under G.S. 49-10, only because the child of a married woman is presumed to be legitimate, then it seems just as ob-vious that Petitioner could not proceed under G.S. 49-14[1] since the purpose of that section is to establish the paternity of an "il-legitimate child." *See* N.C. Gen. Stat. § 49-15. Obviously, then, the presumption of legitimacy would also completely bar Petitioner's action to establish himself as the lawful parent of his minor child under either statute, since the basic premise underlying both G.S. 49-10 and G.S. 49-14 is that the child is illegitimate. The use of the presumption of legitimacy in this manner does not seem to have been intended by the Legislature and should not be applied as a deterrent to Petitioner in his attempts to proceed pursuant to G.S. 49-10.

[5] The State's written Motion to Dismiss Appeal and Response filed with this Court proposes that the natural father of a child born during a lawful marriage must first establish his paternity pursuant to its two-step recommendation, via G.S. 49-14 then G.S. 49-10, because the factual issue of paternity should be resolved in a procedure that provides for a jury trial. The State is concerned that a special proceeding, such as a legitimation under G.S. 49-10, cannot provide these protections in "Locklear" situations.

G.S. 49-10, as a special proceeding, should provide procedural mechanisms for the full and fair resolution of cases like the pres-

---

1. G.S. 49-14 further provides:

(a) Such establishment of paternity shall not have the effect of legitimation.

ent. To ensure the parties' right to a trial by jury, G.S. 49-10 can and should be read in conjunction with the procedural statutes that apply to all special proceedings. *See* N.C. Gen. Stat. §§ 1-273, 1-393 to -408.1 (1983). These procedural statutes are designed to fully protect the rights of all persons interested in special proceedings, including legitimation proceedings. Because of the strong presumption of legitimacy involved in cases like the one before us, the lawful husband of the mother has an obvious interest in a legitimation proceeding involving a child born to his wife while the two were married. The rebuttal of this presumption should be presented to and resolved by a jury to ensure that the parties' rights are adequately protected. Therefore, we agree with the State that in Locklear-type proceedings the factual issue of paternity, when premised on a presumption of legitimacy, must be resolved by a jury. However, this may be accomplished by transferring the case to the civil issue docket for trial at the next ensuing session of the superior court pursuant to G.S. 1-273. Therefore we find it unnecessary to require that the putative father first file a paternity action under G.S. 49-14 before proceeding under G.S. 49-10 to have the child legitimated.

Another argument advanced by the State is that G.S. 49-10 does not require that the issue of paternity be proved "beyond a reasonable doubt," as does G.S. 49-14. We do not view this as a valid concern. In such a proceeding, the mother's husband will have the benefit of the strong presumption of his paternity of any child born to his wife during their marriage. In such situations, courts generally require proof beyond a reasonable doubt to rebut this presumption of legitimacy. S. Schatkin, *supra*, § 1.02. Therefore, we conclude that G.S. 49-10, just as G.S. 49-14, requires proof beyond a reasonable doubt to establish paternity in rebuttal of the presumption of legitimacy arising from the lawful marriage of the mother to another man.

We also note that G.S. 49-10 provides that the child is a necessary party to the proceeding. Rule 17 of the North Carolina Rules of Civil Procedure requires that a minor defend only by general or testamentary guardian or by guardian ad litem. Rule 17 also gives the court authority to appoint a guardian ad litem for the minor notwithstanding the existence of a general or testamentary guardian "in any case when it is deemed by the court . . . expedient to have the [minor] . . . so represented . . . ." N.C.

Gen. Stat. § 1A-1, Rule 17(b)(3) (1983). In the case *sub judice*, Vivian Locklear, the sister of Stanley Locklear, petitioned the court to be appointed guardian ad litem of the minor child. No action was taken on this petition by the courts below, since the proceeding was dismissed on jurisdictional grounds. Upon remand, the clerk of superior court may consider and act upon the petition, pursuant to Rule 17 of the North Carolina Rules of Civil Procedure.

Finally, we address the issue of procedural due process in cases like the present. Although neither party addresses this precise issue, amicus observes the omission from G.S. 49-10 of a requirement of notice to the man to whom the mother was married at the time of the child's conception and birth. As a potentially adverse party in this special proceeding, the married woman's husband should be construed as one of the respondents on whom summons must be served. *See* N.C. Gen. Stat. § 1-394. The requirement that a summons be served upon the man to whom the child's mother was married when the child was conceived and born would further be governed by G.S. 1-393, which provides:

Special Proceedings.

§ *1-393. Chapter and Rules of Civil Procedure applicable to special proceedings.*

The Rules of Civil Procedure and the provisions of this Chapter on civil procedure are applicable to special proceedings, except as otherwise provided. (Code, s. 278; Rev., s. 710; C.S., s. 752; 1967, c. 954, s. 3.)

It is observed that in the case *sub judice*, Petitioner did indeed move to have the mother's husband joined as a party to the proceeding.

Accordingly, we conclude that the clerk of superior court should not have dismissed the petition filed herein on jurisdictional grounds. The clerk could have appointed a guardian ad litem for the minor child; allowed the petitioner's motion to have the mother's husband joined as a party to the proceeding; and transferred the case to the superior court for trial of the issue of paternity. Upon return of the jury verdict, the judge could have entered an order of legitimation or if it appeared to him that justice would be more cheaply and speedily administered by send-

ing the case back to the clerk for further proceedings, he could have done so. N.C. Gen. Stat. 1-276 (1983). The decision of the Court of Appeals is reversed and the case remanded to that court for further remand to the Superior Court of Robeson County for an additional remand to the Clerk of Superior Court of Robeson County for proceedings not inconsistent with this opinion.

Reversed and remanded.

Justice BILLINGS did not participate in the consideration or decision of this case.