LLOYD STUART SURLES v. ELAINE S. SURLES AND DAVID ALAN BLACKMAN

LLOYD STUART SURLES v. ELAINE S. SURLES AND DAVID ALAN BLACKMAN

No. 9111DC1292
No. 9211DC32

(Filed 21 December 1993)

1. **Divorce and Separation § 350 (NCI4th)— child custody— intervention by natural father—custody awarded to mother— no error**

    The trial court did not err by awarding custody of two children to the defendant-mother where the mother's current husband had intervened and claimed to be the biological father of one of the children. The trial court properly considered all relevant evidence relating to the best interests and welfare of the minor children, made twenty-six findings of fact regarding plaintiff's obsessive-compulsive behavior and its effect on the children, and made ten findings relating to the intervenor, six of which related to his ability to create a nurturing and healthy relationship with the children as a member of defendant's household rather than to the paternity of the younger child. While it would be error for a court to allow intervention as of right in a custody and visitation suit by an individual based upon a claim as a biological parent absent a jury determination to that effect, the intervention here was by permission of the court under N.C.G.S. § 1A-1, Rule 24(b) and the court's findings and conclusions supporting that permission were not excepted to by plaintiff.

    **Am Jur 2d, Divorce and Separation § 974 et seq.**

2. **Divorce and Separation § 345 (NCI4th)— child custody— adultery of mother—finding that mother fit and proper**

    The trial court did not err in a child custody proceeding by finding that the mother was a fit and proper person to have custody of her daughters even though the court also found that the defendant-mother had had sexual relations with the intervenor at the time of the younger daughter's concep-

SURLES v. SURLES

[113 N.C. App. 32 (1993)]

tion and while married to plaintiff. Adultery is not a sufficient reason to deny custody.

**Am Jur 2d, Divorce and Separation § 979.**

**3. Divorce and Separation § 348 (NCI4th) — visitation — conditioned on controlling obsessive-compulsive behavior — no error**

The trial court did not err by conditioning plaintiff's visitation with his minor children on his ability to control his obsessive-compulsive behavior when with the children where ample evidence was presented from which the court could have concluded that plaintiff's behavior could jeopardize the children's welfare.

**Am Jur 2d, Divorce and Separation § 980.**

**4. Appeal and Error § 176 (NCI4th) — custody action — appeal — determination of attorney fees**

The trial court had jurisdiction to hear a motion for attorney fees in a child custody action after notice of appeal where the court had expressly reserved the issue of attorney fees at the time it rendered judgment as to the custody matters.

**Am Jur 2d, Appeal and Error § 352 et seq.**

**5. Divorce and Alimony § 552 (NCI4th) — child custody — attorney fees — ability to pay**

The trial court did not abuse its discretion in a child custody action by concluding that plaintiff had the ability to pay an award of attorney fees to defendant where there was a supporting finding based on evidence provided by plaintiff.

**Am Jur 2d, Divorce and Separation § 1061.**

**6. Divorce and Alimony § 546 (NCI4th) — child support — attorney fees — motion subsequent to appeal — no error**

The trial court did not err by awarding defendant attorney fees in a custody action where plaintiff contended that the court erred by failing to consider that defendant made no request for attorney fees and has the ability to pay at least a portion of her expenses. A request for attorney fees may be raised by a motion in the cause and the court's findings support the conclusions of law.

**Am Jur 2d, Divorce and Separation § 1061.**

Judge WYNN concurring.

SURLES v. SURLES

[113 N.C. App. 32 (1993)]

Appeals by plaintiff from orders for child custody, child support, and award of attorney's fees entered 31 October 1991 in Harnett County District Court by Judge William A. Christian. Heard in the Court of Appeals 7 December 1992.

The plaintiff and defendant were married on or about 1 July 1978. Two children, Morgan Faith and Sara Brook, were born of that marriage prior to the couple's separation on or about 1 May 1990. On that date, the parties executed a separation agreement which provided for the joint custody of the children.

On 23 August 1990, the plaintiff filed a complaint seeking custody and child support from the defendant. The defendant filed her answer and counterclaim on 29 October 1990, alleging that the plaintiff was not a "fit and proper" parent for the children, and for the first time alleging that the younger child, Sara Brook, was not the biological child of the plaintiff. The defendant prayed for custody and child support for both children.

On 10 December 1990, David A. Blackman moved to intervene as of right in the above custody action. In that motion, he claimed that he was the natural father of Sara Brook Surles, and as such, sought visitation rights pursuant to N.C. Gen. Stat. § 50-13.2(b)(1). On the same day by separate motion, Blackman also moved for temporary and permanent custody of the child. The trial court in the intervention action found as a fact that "the odds of David A. Blackman being the biological father of SARA BROOK SURLES is 96,879 to 1 . . . ." The court also found that:

> Defendant [Mrs. Surles] claims that paternity has been established under N.C.G.S. § 110-132; David A. Blackman has executed a voluntary support agreement for the support of SARA BROOK SURLES, . . . in a separate proceeding in Wake County, North Carolina, David A. Blackman has executed and filed with the Clerk a written acknowledgment of paternity and an affirmation of paternity by the mother, and at the in chambers hearing . . . the Court received in evidence a judgment of paternity entered by the District Court in Wake County, . . . .

The Court further found that "it is not clear from the record that the parent-child rights of the Plaintiff . . . and the child . . . were protected in that proceeding." Mr. Blackman's motion to intervene was granted on 16 December 1990. The plaintiff did not appeal the intervention.

On 11 December, the defendant, Mrs. Surles, moved to continue the custody action. The continuance was granted; however, the trial court, on its own motion, with the defendant's consent, modified the previous custody order and awarded "exclusive custody of the minor children [to the plaintiff] without any visitation being granted to the defendant pending a hearing on the merits." The court also ordered that psychological evaluations be completed on each child and ordered completion of discovery within thirty days.

Various delays prevented calendaring of the trial, and on 13 February 1991, the plaintiff made a motion in the cause seeking child support from the defendant. The next day, the defendant filed a similar motion requesting visitation with the children. On 2 March, the defendant, Mrs. Surles, was allowed visitation every other weekend, and on 16 March, she was ordered to pay $248.00 each month in child support.

Trial was held in Harnett County District Court beginning 13 May 1991. Subsequent to the trial, the court entered an order on 31 October 1991, granting custody to Mrs. Surles and allowing visitation of both of the minor children to the plaintiff and visitation of Sara Brook to the intervenor.

On 26 June 1991, plaintiff filed notice of appeal to this Court. On 23 July 1991, the defendant filed a motion for attorney's fees in the custody litigation. The motion was argued on 12 September 1991, and the trial judge ordered the plaintiff to pay to defendant $13,812.50 in attorney's fees. Both orders were entered by the trial court on 31 October 1991. From the order awarding attorney's fees, as well as the order granting custody to the defendant, the plaintiff appeals. The appeals were consolidated by order of this Court on 17 June 1992.

*Reid, Lewis, Deese & Nance, by Renny W. Deese, for plaintiff-appellant.*

*Armstrong & Armstrong, P.A., by Marcia H. Armstrong, for defendant-appellee.*

*Harris, Mitchell, Hancox & VanStory, by Ronnie M. Mitchell and Kathleen G. Sumner, for intervenor-appellee.*

ORR, Judge.

The plaintiff argues three issues in his appeal of the custody award. First, he asserts that the trial court erred in considering

the paternity issue in determining the custody of the children born of the marriage. Secondly, he argues that the trial court erred in failing to find facts and make conclusions of law regarding his spouse's conduct during the marriage, and finally, he contends that the court erred in conditioning plaintiff's visitation of the minor children only "so long as plaintiff can control his obsessive and ritualistic behavior to the extent that it does not affect the minor children." As to the first issue, we conclude that evidence of paternity may properly be considered in determining the best interests of the children. We also find that the plaintiff's second and third assignments of error are without merit and affirm those portions of the trial court's decision.

## I.

## A.

[1] Plaintiff's first assignment of error raises the issue of whether evidence submitted by an alleged biological father may be considered in determining custody of minor children of a marriage when the husband of the marriage asserts that he is the natural father of the children and seeks custody of both children born during the marriage.

The plaintiff relies on the ancient common law principal that a mother's children born of a marriage are presumed to be the husband's children: *"pater is est quem nuptiae demonstrant"*. *Goodright v. Moss*, 98 Eng. Rep. 1257 (1777). *See also* Tiana M. Hinnant, Note, *Family Law—Lovers' Triangle Turns Bermuda Triangle: The Natural Father's Right to Rebut the Marital Presumption*, 25 Wake Forest L. Rev. 617 (1990). However, the appeal in the case *sub judice* arises out of a custody dispute heard pursuant to N.C. Gen. Stat. § 50-13, rather than in the course of a paternity hearing. The trial court's entire objective in these cases is to determine the best environment for the child or children. As is the case here, these decisions are often difficult, but even where parents love their children, "a parent's love must yield to another, if, after judicial investigation, it is found that the best interest of the child is subserved thereby." *Greer v. Greer*, 5 N.C. App. 160, 163, 167 S.E.2d 782, 784 (1969). Of necessity in these cases, the trial court is vested with wide discretion. *Sheppard v. Sheppard*, 38 N.C. App. 712, 248 S.E.2d 871 (1978), *cert. denied*, 296 N.C. 586, 254 S.E.2d 34 (1979). "He has the opportunity to see the parties in person and to hear the witnesses, and his decision ought not be

SURLES v. SURLES

[113 N.C. App. 32 (1993)]

upset on appeal absent a clear showing of abuse of discretion." *Falls v. Falls*, 52 N.C. App. 203, 209, 278 S.E.2d 546, 551, *cert. denied*, 304 N.C. 390, 285 S.E.2d 831 (1981). "He can detect tenors, tones, and flavors that are lost in the bare printed record read months later by appellate judges." *Newsome v. Newsome*, 42 N.C. App. 416, 426, 256 S.E.2d 849, 855 (1979).

Further, the trial court must decide custody mindful that "the welfare of the child is the paramount consideration to which all other factors, including *common law preferential rights* of the parents, must be deferred or subordinated . . . ." *Plemmons v. Stiles*, 65 N.C. App. 341, 345, 309 S.E.2d 504, 506 (1983) (emphasis added). Before awarding custody of a child to a particular party, the trial court must conclude as a matter of law that the award of custody "will best promote the interest and welfare of the child." N.C. Gen. Stat. § 50-13.2(a). Findings of fact as to the characteristics of the competing parties must be made to support the necessary conclusions of law. These findings may concern *"physical, mental, or financial fitness or any other factors brought out by the evidence* and relevant to the issue of the welfare of the child." *Steele v. Steele*, 36 N.C. App. 601, 604, 244 S.E.2d 466, 468 (1978) (emphasis added).

Voluminous evidence was presented by the parties during the trial. At the close of all the evidence, the trial court in the instant case made extensive findings of fact including the following:

4. Plaintiff and Defendant are the natural parents of the minor child: Morgan Faith Surles, born 23 November 1987.

5. Defendant is the natural mother of the minor child: Sara Brook Surles, born 3 July 1989.

6. Intervenor Plaintiff, Defendant and the minor child, Sara Brook Surles, submitted to blood testing to determine whether or not Intervenor Plaintiff is the biological father of Sara Brook Surles. The results of the ABO, HLS-A, HLA-B and DNA tests establish that the probability of Intervenor Plaintiff being the biological father of Sara Brook Surles is 96,879 to 1.

. . .

8. After she was three (3) month[s] pregnant with Sara Brook Surles, Defendant had sexual intercourse with the Plaintiff.

Prior to this act, Plaintiff and Defendant had not had sexual intercourse for approximately two (2) years.

. . .

10. Based upon the evidence presented, this Court is convinced that Intervenor Plaintiff is the biological parent of Sara Brook Surles.

11. Plaintiff has during the marriage developed excessive ritualistic behavior concerning cleanliness, the fear of germs and the fear of being contaminated by body fluids. This behavior has become more excessive from 1988 to the present. This Court is concerned with this character of the Plaintiff and believes from the evidence presented that Plaintiff suffers from Obsessive Compulsive Disorder as defined . . . by the DSM-3-R. . . . The Court is of the opinion that if Plaintiff's excessive and ritualistic behavior is unchanged, it can have an adverse impact on the minor children.

Findings of Fact Numbers 12 through 29 reflected the evidence presented of the behavior of the plaintiff which indicated this disorder.

The court further found with respect to the plaintiff:

30. Plaintiff insisted on giving the minor child Morgan Faith Surles baths even after Defendant had already given the child a bath. Plaintiff has scrubbed Morgan Faith Surles to such an extent that the child screamed and cried and her vaginal area was red and raw. The court finds that this behavior is not in the best interest of the child.

31. The minor children have been subject to Plaintiff's ritualistic and obsessive behavior and have shown such behavior in their play. When playing with her kitchen, Morgan Surles would copy the ritual of turning the stove on and off. Morgan Surles has an excessive need to wash herself and the toys with which she is playing. One of Brook Surles favorite toys is a baby wipe which she uses to clean things. Morgan Surles has shown an unusual concern about her personal safety at night and unusual need to have the premises secured before going to sleep.

. . .

SURLES v. SURLES

[113 N.C. App. 32 (1993)]

33. It is likely that Plaintiff has an Obsessive Compulsive Disorder. Regardless of whether or not Plaintiff has an Obsessive Compulsive Disorder, his excessive and ritualistic behavior has adversely affected the minor children and is likely to continue to adversely affect the minor children if they live with Plaintiff.

. . .

37. Except for a period of thirty (30) minutes during Christmas, from 11 December 1990 until March 1991, Plaintiff made no effort, and refused to allow the children to see Defendant or members of Defendant's immediate family.

38. Plaintiff has displayed vindictiveness towards the Defendant, has called Defendant vulgar names in the presence of the minor children, has wrongfully accused Defendant of improper sexual conduct in the presence of the children and has tried to defame Defendant in the community to the detriment of the minor children. This behavior on the part of Plaintiff has not been in the best interest of the children.

39. Plaintiff employed at least five (5) private detectives to follow Defendant.

. . .

58. Because of the problems that Plaintiff has demonstrated concerning the issues of sexuality (excessive concern with contracting aides [sic], compulsive cleaning of the child's vaginal area), it is in the best interest of the children to be in the primary care, custody and control of the Defendant so that she can properly deal with the issues of sexuality with her daughters.

59. In light of the history of this case and the obsessive and ritualistic behavior of the Plaintiff and his unyielding attitude as it relates to custody of the children, the Court finds it is in the best interest of the children to be in the primary care, custody and control of the Defendant.

60. As long as Plaintiff can control his obsessive and ritualistic behavior and his vindictiveness towards the defendant to the extent that it does not adversely effect the minor children, he is a fit and proper person to visit with the minor children . . . .

With respect to the defendant, the trial court found the following:

41. Defendant has a MBA degree from Campbell University and is currently employed by the State of North Carolina and has the ability to financially provide for the minor children. Defendant's working hours are approximately 8:00 a.m. until 4:30 p.m.

42. Defendant has proper daycare arrangements for the children while she is at work. Defendant has flexibility with her job so that she can attend to the needs of the children.

43. Defendant has extended family members and friends which can assist her with the minor children.

44. Defendant has the ability and sensitivity to nurture the children and to provide for their emotional, spiritual, mental, educational, social and physical needs.

. . .

49. Defendant has not shown any vindictiveness towards the Plaintiff and has shown a desire to cooperate with Plaintiff and his family members to promote the best interest of the children.

We find no error in awarding the custody of both children to the defendant mother. The trial court made twenty-six findings of fact regarding the plaintiff's obsessive compulsive behavior and its effect on the children; he made ten findings relating to the intervenor. Of those ten findings, six did not relate to the paternity of the younger child, but rather to his ability to create a nurturing and healthy relationship with the children as a member of the defendant's household. (The defendant and the intervenor were married on 27 July 1991, shortly after this hearing.)

The plaintiff relies on *In re Legitimation of Locklear*, 314 N.C. 412, 334 S.E.2d 46 (1984), for the proposition that in order to overcome the presumption of the legitimacy of a child born during lawful wedlock, there must be a jury trial resolving the issue of paternity. His argument continues that this determination must take place before one who claims to be the biological father is allowed to intervene in a custody dispute between the husband and wife.

We find *Locklear* does not control in this case. However, we agree with plaintiff to the extent that it would be error for a Court to allow intervention as of right in a custody and visitation

suit by an individual based upon a claim as a biological parent, absent a jury determination to that effect. However, in this case, the trial judge allowed Blackman to intervene by permission of the Court under Rule 24(b). Rule 24(b) states in pertinent part that

> *anyone* may be permitted to intervene in an action[:]
>
> (1) [w]hen a statute confers a conditional right to intervene; or
>
> (2) [w]hen an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

N.C. Gen. Stat. § 1A-1, Rule 24(b) (emphasis added). The Court set out specific findings and conclusions as to why intervention was permissively allowed, none of which were excepted to by the plaintiff. Therefore, we need not review the correctness of the trial court's allowance of Blackman's motion to intervene.

Based on the above reasoning, we find that the trial court properly considered all relevant evidence relating to the best interests and welfare of the minor children and find no error in awarding custody of both children to the defendant mother.

## B.

[2] The plaintiff also assigns as error the trial court's failure to find facts and reach conclusions based on the "defendant's infidelity and immoral conduct . . . on the grounds that such issue was litigated." We note that defendant's actions during the course of the marriage were not disputed; in fact, the actions of the defendant and the intervenor were raised in prior motions and readily admitted by the parties. The trial court in fact made findings based on the evidence presented that the defendant had sexual relations with the intervenor at the time of Brook's conception.

As pointed out by both plaintiff and defendant, adultery is not a sufficient reason to deny custody. *Paschal v. Paschal*, 21 N.C. App. 120, 203 S.E.2d 337 (1974); *Green v. Green*, 54 N.C. App. 571, 284 S.E.2d 171 (1981). The trial court found that the children's mother was a fit and proper person to have custody of her daughters. Those findings are binding on this Court where they are supported by the evidence presented. "[T]he trial judge

is not required to find *all* the facts shown by the evidence . . . . It is sufficient if enough *material* facts are found to support the judgment." *In re Custody of Stancil*, 10 N.C. App. 545, 549, 179 S.E.2d 844, 847 (1971) (emphasis in original). We find that the findings of fact in the case at bar amply support the court's conclusions of law, and it was unnecessary to make further findings regarding the relationship of the defendant with the intervenor.

## C.

**[3]** Lastly, the plaintiff argues that the trial court erred in conditioning the visitation of the minor children on his ability to control his obsessive compulsive behavior when with the children. We disagree.

"While a noncustodial parent has a right to reasonable visitation, that right is limited to avoid jeopardizing the child's welfare." *Woncik v. Woncik*, 82 N.C. App. 244, 250, 346 S.E.2d 277, 280 (1986). Ample evidence was presented at trial from which the trial court could have concluded that the behavior of the plaintiff, particularly his concern with sexual hygiene, could jeopardize the children's welfare. The defendant was not required to prove that the plaintiff suffered from the disorder before the trial judge could condition visitation.

" '[U]pon appellate review of a case heard without a jury the trial court's findings of fact are conclusive on appeal if there is evidence to support them, even though the evidence might sustain a finding to the contrary.' " *Chandler v. Chandler*, 108 N.C. App. 66, 73, 422 S.E.2d 587, 592 (1992). We find no abuse of discretion here and accordingly overrule this assignment of error.

## II.

## A.

**[4]** Plaintiff has also appealed the award of attorney's fees in the above custody action in a separate action before this Court. He argues that the trial court was without jurisdiction to allow the defendant's motion once notice of appeal to this Court was given by the plaintiff. We disagree.

The trial in this case commenced on 13 May 1991 and concluded on 3 June 1991. At the close of the trial, after the court had rendered its decision, defendant made a motion for counsel fees. The court responded that, "I would like you to make a formal

motion, serve it on counsel, and set forth any propositions that you might have in regard to that particular matter." There was no objection or comment by plaintiff's counsel. On 26 June 1991, the plaintiff filed Notice of Appeal to this Court for a determination on the custody issues. The hearing on attorney's fees was conducted on 12 September 1991, and the trial court made its decision that day. The custody order and the order granting attorney's fees were signed by the trial judge on 31 October 1991.

The plaintiff acknowledges that he could have waited until after the order was signed by the judge on 31 October but was not required to wait until the final entry of judgment. However, had his first appeal proceeded without entry of final judgment, this Court would have been without jurisdiction to hear the matters before it.

> An announcement of judgment in open court constitutes the rendition of judgment, not its entry. Rendition of judgment merely marks the beginning of the time during which a party may give timely notice of appeal. While timely notice of appeal generally divests the trial court of jurisdiction, notice of appeal does not remove the authority of the trial court to enter its written judgment where it conforms substantially with the court's oral announcement. . . . [E]ntry of judgment by the trial court is the event which vests jurisdiction in this Court, and the judgment is not complete for the purpose of appeal until its entry.

*Searles v. Searles*, 100 N.C. App. 723, 726, 398 S.E.2d 55, 56 (1990) (citations omitted).

The trial court in the case *sub judice* expressly reserved the issue of attorney's fees at the time it rendered judgment as to the custody matters before it, and accordingly, it retained the authority to consider the issue since attorney's fees were within the court's "oral anouncements". The subsequent orders entered on 31 October 1991 therefore "conformed substantially" with those statements. We therefore reject the plaintiff's argument that the court had no jurisdiction to hear the motion for attorney's fees.

### B.

[5] The plaintiff also raises on appeal the trial court's conclusion that the plaintiff had the ability to pay the award of attorney's fees. He contends that insufficient evidence was presented from

which the trial court could conclude that he was able to pay the defendant's costs of litigation.

However, on the contrary, the trial court found as a fact that:

> Plaintiff introduced a financial affidavit showing that he has assets with a net fair market value of. $89,000.00. Plaintiff has gross monthly income of $3000.00 from his employment with First Federal Saving Bank. Plaintiff testified at the custody hearing in this cause that he has a farm which he intends to sell. Additionally, Plaintiff has access to funds through his relationship with BB&T Bank in Fuquay.

From this finding alone, based on the evidence provided by the plaintiff himself, the trial court could conclude that the plaintiff had the ability to pay the attorney's fee award.

The award of counsel fees lies within the discretion of the trial court. *Spencer v. Spencer*, 70 N.C. App. 159, 319 S.E.2d 636 (1984). We find no abuse of discretion in the instant case with respect to the evidence supporting the court's conclusion that the plaintiff had the ability to pay the award.

### C.

[6] The plaintiff also argues that the trial court erred in awarding attorney's fees by failing to consider that defendant made no request for attorney's fees and does have the ability to pay at least a portion of her expenses relating to this litigation. However, as plaintiff himself points out, "[a] request for attorney's fees may be properly raised by a motion in the cause subsequent to the determination of the main action." *In re Baby Boy Scearce*, 81 N.C. App. 662, 663, 345 S.E.2d 411, 413, *cert. denied*, 318 N.C. 415, 349 S.E.2d 595 (1986). *Scearce* dealt directly with attorney's fees arising out of a custody dispute pursuant to N.C. Gen. Stat. § 50-13.6 and is dispositive to the case at bar. The trial court's findings of fact support his conclusions of law in the order for attorney's fees and therefore will not be disturbed on appeal.

In light of the aforementioned disposition of the case, we find it unnecessary to review the plaintiff's last assignment of error.

Affirmed.

Judge JOHNSON concurs.

Judge WYNN concurs in a separate opinion.

Judge WYNN concurring.

Upon review of the trial court's order awarding custody to the defendant mother Elaine S. Surles, I conclude that the trial court erred as a matter of law by finding that intervenor David Blackman is the biological father of Sara Brook Surles. It is the law of North Carolina that in order to overcome the presumption of legitimacy of a child born during lawful wedlock, there must be a jury trial resolving the issue of paternity. *In re Legitimation of Locklear*, 314 N.C. 412, 334 S.E.2d 46 (1985). By including in its findings of fact the statement that Blackman is the biological parent of the child, the court essentially rendered a determination of paternity without a jury, in violation of *Locklear*.

Having so concluded, I would nonetheless find such error harmless. The trial court made sufficient findings of fact as to the other circumstances surrounding the custody decision, including the suitability of both the plaintiff and the defendant, to justify its award of custody to the defendant.

