IN RE: MICHAEL G. PAPATHANASSIOU

No. COA08-95

(Filed 3 February 2009)

**Paternity— legitimation proceeding—summary judgment**

The trial court did not err in a legitimation proceeding by granting summary judgment in favor of petitioner because: (1) our General Assembly has not required a best interest of the child inquiry in the context of a legitimation proceeding; (2) DNA tests indicated a 99.99 percent probability that petitioner is the biological father of the child; (3) respondent, the former husband of the mother of the child, offered no evidence to the contrary, and admitted that he is not the biological father of the child; (4) although the husband of the mother of a child born during the parties' marriage is presumed to be the father of that child, a determination that a petitioner in a legitimation action, and not the husband, is the biological father of the child terminates the husband's rights to the child; and (5) the only issue to be decided in a legitimation proceeding under N.C.G.S. §§ 49-10 and 49-12.1

is whether the putative father who has filed a petition to legitimate is the biological father of the child.

Appeal by Respondent Andrew Papathanassiou from orders entered 18 August 2005 by the Honorable Martha H. Curran, Clerk of Mecklenburg County Superior Court, and 14 February 2007 by the Honorable Timothy S. Kincaid in Mecklenburg County Superior Court. Heard in the Court of Appeals 22 September 2008.

*James, McElroy & Diehl, P.A., by Jonathan D. Feit and Sarah M. Brady, for Petitioner-Appellee.*

*Todd Cline, P.A., by Todd W. Cline, for Respondent-Appellee.*

*Cheshire, Parker, Schneider, Bryan & Vitale, by Jonathan McGirt, and Sandlin & Davidian, PA, by Deborah Sandlin, for Respondent-Appellant.*

*No brief filed for Guardian ad Litem for the minor child.*

STEPHENS, Judge.

The paramount question presented by this appeal is whether the sole factual issue before the court in a legitimation proceeding pursuant to N.C. Gen. Stat. §§ 49-10 and 49-12.1 is the determination of whether the petitioner is the biological father of the minor child. We hold that it is.

*Background and Procedure*

On 25 June 1995, Andrew Papathanassiou ("Respondent") and Altona Dee Jetton Papathanassiou ("Ms. Jetton") were married. On 23 December 1997, Ms. Jetton gave birth to Michael Gray Papathanassiou ("the child"). Respondent and Ms. Jetton were listed as the child's father and mother on the child's birth certificate. At the time the child was conceived and born, Respondent was unaware that he was not the biological father of the child. In the spring of 1998, Respondent obtained a DNA test which indicated that he was not the child's biological father. Nevertheless, Respondent continued to regard and conduct himself as the child's father in every other way. On 12 January 2000, Ms. Jetton gave birth to William Garret Papathanassiou, who is Respondent's biological child.

On or about 1 February 2002, Respondent and Ms. Jetton separated. On 4 June 2003, Ms. Jetton filed a complaint against Respondent in Mecklenburg County District Court seeking, *inter alia,*

custody and child support for the two minor children "born during the parties' marriage[.]" On 30 July 2002, Ms. Jetton filed an amended complaint, alleging that only "[o]ne child was born of the marital relationship," namely William.

On 1 August 2003, a consent order was entered, finding as fact that Ms. Jetton and Respondent were "the biological parents of one child," William, and resolving the issues of child custody and child support with respect to William only. On 6 October 2003, Respondent and Ms. Jetton were divorced.

On 11 May 2005, Gordon B. Grigg ("Petitioner") filed a Petition to Legitimate in a special proceeding before the Mecklenburg County Clerk of Superior Court. The petition sought to legitimate the child pursuant to N.C. Gen. Stat. § 49-10. On 9 June 2005, Respondent, although not yet a party to the proceeding, filed a motion to dismiss, alleging that the petition was fatally defective for failing to name him as a necessary party, for insufficiency of service of process, and for failing to request or obtain appointment of a guardian *ad litem* for the child, as required by N.C. Gen. Stat. § 49-12.1(a).

Respondent's motion was heard on 14 June 2005 by the Honorable Martha H. Curran, Mecklenburg County Clerk of Superior Court. The Clerk granted a continuance to allow for personal service on Respondent and appointed a guardian *ad litem* for the child.

On 2 August 2005, the Clerk convened a hearing on the Petition to Legitimate. On 18 August 2005, the Clerk entered an Order to Legitimate decreeing that "[t]he minor child, Michael Gray Papathanassiou, is declared legitimate, Petitioner is declared the biological father[]," and "[t]he minor child's name is changed to Michael Gray Grigg[.]"

From this order, Respondent appealed to the Superior Court of Mecklenburg County for a hearing *de novo* pursuant to N.C. Gen. Stat. § 1-301.2(e). On 20 February 2006, Petitioner filed a Motion *in Limine* and Citation of Authority, requesting that the trial court dismiss Respondent's appeal on grounds that Respondent was not a necessary party to the action and requesting that Respondent be precluded from using any pleading, testimony, remarks, questions, or argument regarding the best interest of the child. On 26 October 2006, Petitioner filed a Motion for Summary Judgment. On 31 October 2006, Petitioner filed an Amended Motion for Summary Judgment.

On 2 November 2006, Petitioner filed another Motion *in Limine*, requesting that the trial court exclude any evidence regarding the

IN RE PAPATHANASSIOU

[195 N.C. App. 278 (2009)]

child's best interest or public policy concerns of legitimating the child, and seeking to limit the evidence solely to the issue of biological paternity. On 6 February 2007, Petitioner filed a Second Amended Motion for Summary Judgment.

On 13 February 2007, Respondent filed responses to Petitioner's motions *in limine*. A hearing on Petitioner's motion for summary judgment and motions *in limine* was held on 14 February 2007 before the Honorable Timothy S. Kincaid. On that day, the trial court entered an Order Granting Summary Judgment, declaring the child to be legitimate, declaring Petitioner to be the child's biological father, and allowing the child's last name to remain Grigg.

From the Order to Legitimate and the Order Granting Summary Judgment, Respondent appeals.

## Discussion

Respondent argues that the trial court improperly granted summary judgment in favor of Petitioner. Specifically, Respondent asserts the trial court erroneously considered DNA evidence of Petitioner's biological parentage of the child as conclusive evidence that the child should be legitimated as the child of Petitioner, without consideration of the child's best interest. Petitioner further argues that summary judgment was inappropriate as there is a genuine issue of material fact regarding the child's best interest.

"North Carolina courts have long recognized that children born during a marriage . . . are presumed to be the product of the marriage." *Jones v. Patience*, 121 N.C. App. 434, 439, 466 S.E.2d 720, 723, *appeal dismissed and disc. review denied*, 343 N.C. 307, 471 S.E.2d 72 (1996). "The presumption is universally recognized and considered one of the strongest known to the law." *In re Legitimation of Locklear*, 314 N.C. 412, 419, 334 S.E.2d 46, 51 (1985). However, "[t]he presumption of legitimacy can be overcome by clear and convincing evidence." N.C. Gen. Stat. § 49-12.1(b) (2005).

Pursuant to N.C. Gen. Stat. § 49-12.1, "[t]he putative father of a child born to a mother who is married to another man may file a special proceeding to legitimate the child." N.C. Gen. Stat. § 49-12.1(a) (2005). The putative father

may apply by a verified written petition, filed in a special proceeding in the superior court of the county in which the putative father resides or in the superior court of the county in which the child resides, praying that such child be declared legitimate.

N.C. Gen. Stat. § 49-10 (2005). The mother, if living, the child, and the spouse of the mother of the child shall be necessary parties to the proceeding. N.C. Gen. Stat. § 49-10; N.C. Gen. Stat. § 49-12.1(a). "A guardian ad litem shall be appointed to represent the child if the child is a minor." N.C. Gen. Stat. § 49-12.1(a).

> If it appears to the court that the petitioner is the father of the child, the court may thereupon declare and pronounce the child legitimated; and the full names of the father, mother and the child shall be set out in the court order decreeing legitimation of the child.

N.C. Gen. Stat. § 49-10.

"[O]ur General Assembly has continually enacted and modified legislation to establish legal ties binding illegitimate children to their biological fathers and to acknowledge the rights and privileges inherent in the relationship between father and child." *Rosero v. Blake*, 357 N.C. 193, 201, 581 S.E.2d 41, 46 (2003), *cert. denied*, 540 U.S. 1177, 158 L. Ed. 2d 78 (2004). Legitimation of a child under Chapter 49

> impose[s] upon the father and mother all of the lawful parental privileges and rights, as well as all of the obligations which parents owe to their lawful issue, and to the same extent as if said child had been born in wedlock, and to entitle such child by succession, inheritance or distribution, to take real and personal property by, through, and from his or her father and mother as if such child had been born in lawful wedlock. In case of death and intestacy, the real and personal estate of such child shall descend and be distributed according to the Intestate Succession Act as if he had been born in lawful wedlock.

N.C. Gen. Stat. § 49-11 (2005). By specifying the manner in which an illegitimate child's paternity may be established, the legislature has attempted to grant to illegitimate children rights of inheritance on par with those enjoyed by legitimate children. *Mitchell v. Freuler*, 297 N.C. 206, 216, 254 S.E.2d 762, 768 (1979). Accordingly, the inquiry in Sections 49-10 and 49-12.1 is whether the petitioner is the biological father of the minor child such that the rights and responsibilities inherent in the relationship between father and child may be acknowledged.

Citing N.C. Gen. Stat. §§ 50-13.2, 7B-1110, and 48-1-101, Respondent asserts that "[i]t is implicit in all of North Carolina's statutes regarding minor children that the court should consider the best

interest of the child before making any decision regarding the child[,]" and argues that the permissive language in N.C. Gen. Stat. §§ 49-10 and 49-12.1 implies that the court must consider the best interest of the child before entering an order of legitimation.

N.C. Gen. Stat. § 50-13.2 provides that "[a]n order for [child] custody must include findings of fact which support the determination of what is in the best interest of the child." N.C. Gen. Stat. § 50-13.2(a) (2005). N.C. Gen. Stat. § 7B-1110 provides that "[a]fter an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the juvenile's best interest." N.C. Gen. Stat. § 7B-1110(a) (2005). N.C. Gen. Stat. § 48-1-101 is a list of definitions applicable to Chapter 48 of the General Statutes which governs adoptions. Although the definitions section does not mention the best interest of the child, specific provisions in Chapter 48 do require that the court consider a child's best interest when considering adoptive placement for the child. *See, e.g.*, N.C. Gen. Stat. § 48-2-501(a) (2005) ("Whenever a petition for adoption of a minor is filed, the court shall order a report to the court made to assist the court to determine if the proposed adoption of the minor by the petitioner is in the minor's best interest."); N.C. Gen. Stat. § 48-2-603(a) (2005) ("At the hearing on, or disposition of, a petition to adopt a minor, the court shall grant the petition upon finding by a preponderance of the evidence that the adoption will serve the best interest of the adoptee . . . ."); N.C. Gen. Stat. § 48-2-606(a)(7) (2005) ("A decree of adoption must state . . . [t]hat the adoption is in the best interest of the adoptee."). Contrary to Respondent's assertion, the above-referenced statutes explicitly, not implicitly, require the court to consider the best interest of the child.

In *In re Change of Name of Crawford to Crawford Trull*, 134 N.C. App. 137, 517 S.E.2d 161 (1999), petitioner alleged that the court committed reversible error in failing to consider the minor child's best interest in determining whether to allow the child's mother to change the child's surname over the biological father's objections. This Court rejected petitioner's argument, explaining:

Our General Assembly . . . has not required a "best interest[] of the child" inquiry in the context of naming a child under G.S. § 130A-101(f)(4), nor in the changing of a child's name under G.S. § 101-2. While the General Assembly has specifically required such an inquiry in contexts such as termination of parental rights, child custody and placement, parental visitation

rights, and even in the context of a change in surname on a birth certificate following legitimation, *see* N.C. Gen. Stat. § 130A-118, its failure to require a best interest[] inquiry in connection with G.S. § 101-2 and G.S. § 130A-101(f)(4) is clear evidence of its intent that no such inquiry is required in this context.

*Id.* at 142-43, 517 S.E.2d at 164.

Similar to the statutes at issue in *Crawford*, our General Assembly has not required a "best interest of the child" inquiry in the context of a legitimation proceeding. While the General Assembly has specifically required such an inquiry under N.C. Gen. Stat. §§ 50-13.2 and 7B-1110, and Chapter 48, its failure to mandate a best interest inquiry in connection with N.C. Gen. Stat. §§ 49-10 and 49-12.1 is clear evidence of its intent that no such inquiry is required in this context. *See Elec. Supply Co. v. Swain Elec. Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991) ("Legislative purpose is first ascertained from the plain words of the statute.").

Respondent additionally argues that requiring the husband of the mother of the child be made a party to the legitimation proceeding implies that the court must consider the best interest of the child. Respondent contends that if "the biological parentage of the child [i]s the only issue to be determined in a legitimation proceeding, and upon proof of biological parentage, [Petitioner] [i]s entitled to summary judgment as a matter of law[,]" then there is no purpose for the joinder of the mother's husband as a necessary party. We disagree.

Pursuant to Rule 19 of the North Carolina Rules of Civil Procedure, all those with an interest in an action or proceeding must be joined as necessary parties to the action. A necessary party is one "who ha[s] a claim or material interest in the subject matter of the controversy, [whose] interest will be directly affected by the outcome of the litigation." *Lombroia v. Peek*, 107 N.C. App. 745, 750, 421 S.E.2d 784, 787 (1992); N.C. Gen. Stat. § 1A-1, Rule 19(b) (2005).

The husband of the mother of a child born during the parties' marriage is presumed to be the father of that child and, thus, enjoys all the parental rights and privileges, as well as obligations, to that child. A determination that a petitioner in a legitimation action, and not the husband, is the biological father of the child terminates the husband's rights to the child, conferring them onto petitioner. N.C. Gen. Stat. § 49-11. Thus, unless the husband has previously been determined not to be the child's father, he is a necessary party to the

proceeding. *Lombroia,* 107 N.C. App. at 751, 421 S.E.2d at 787. As "a potentially adverse party in this special proceeding," *Locklear,* 314 N.C. at 422, 334 S.E.2d at 52, the husband is permitted to file pleadings and motions, *see* N.C. Gen. Stat. 1A-1, Rule 7 (2005), obtain discovery, *see* N.C. Gen. Stat. § 1A-1, Rule 26 (2005), and present evidence. *See* N.C. Gen. Stat. § 8C-1, Rule 101 *et seq.* (2005). Accordingly, Respondent could have introduced evidence of his paternity and/or rebutted or discredited evidence of paternity presented by Petitioner. Although Respondent in this case could accomplish neither, his presence was not "obviously, utterly immaterial," as it afforded him an opportunity to defend the presumption that he was the child's father and discredit Petitioner's evidence to the contrary.

Respondent further argues that the requirement that the court appoint a guardian *ad litem* for the minor child during a legitimation proceeding implies that, similar to a termination of parental rights proceeding, the court must employ a two-step process before entering an order of legitimation: first, the court must determine whether grounds exist that would allow for legitimation, and then the court must determine whether legitimation is in the best interest of the child.

Section 49-10 specifies the procedures to be followed in a proceeding pursuant to Section 49-12.1, and provides that the child is a necessary party to the legitimation proceeding. Section 49-12.1 states specifically that if the child is a minor, a guardian *ad litem* must be appointed to represent the child. N.C. Gen. Stat. § 49-12.1(a). However, regardless of whether Section 49-12.1 required this, appointment of a guardian *ad litem* for the minor child·is mandated by Rule 17 of the·North Carolina Rules of Civil Procedure.[1]

Guardians *ad litem* are appointed to stand in place of minor children in all civil actions and proceedings as minors are presumed by law not to have the requisite capacity to handle their own affairs. *See In re Clark,* 303 N.C. 592, 281 S.E.2d 47 (1981). The role of the guardian *ad litem* is to defend on behalf of the minor child, N.C. Gen. Stat. § 1A-1, Rule 17(b)(2) (2005), and to "protect the interest of the [minor] defendant at every stage of the proceeding." *Clark,* 303 N.C. at 598, 281 S.E.2d at 52 (quotation marks and citation omitted). Thus, contrary to Respondent's assertion, the appointment of a guardian

---

1. "The Rules of Civil Procedure and the provisions of this Chapter on civil procedure are applicable to special proceedings, except as otherwise provided." N.C. Gen. Stat. § 1-393 (2005).

*ad litem* does not dictate the form and inquiry of the proceeding; rather, the duties of the guardian *ad litem* are dictated by the action or proceeding in which the guardian *ad litem* has been appointed. In the context of a legitimation proceeding, where the inquiry of the court is whether the petitioner is the biological father of the minor child, the guardian *ad litem* must defend on behalf of the child in a manner that assures that the child's interest in the determination of his or her biological father is protected.

Respondent finally asserts that requiring the trial court to consider the best interest of the child is consistent with other statutes regarding the well-being of the child, such as N.C. Gen. Stat. §§ 48-3-603 and 48-3-601(2)(b). Respondent correctly states that pursuant to N.C. Gen. Stat. § 48-3-603, prior to legitimating the child, Petitioner's consent would not have been required for the child to have been placed for adoption. Additionally, Respondent correctly states that pursuant to N.C. Gen. Stat. § 48-3-601(2)(b), prior to Petitioner's legitimating the child, Respondent's consent would have been required for the child to have been placed for adoption. However, pursuant to N.C. Gen. Stat. § 48-3-603, Respondent's consent would *not* be required after Petitioner's petition to legitimate the child was granted. N.C. Gen. Stat. § 48-3-603(a)(2) (2005).

Having carefully considered Respondent's arguments, and not being unsympathetic to his position, we are constrained to hold that the only issue to be decided in a legitimation proceeding pursuant to N.C. Gen. Stat. §§ 49-10 and 49-12.1 is whether the putative father who has filed a petition to legitimate is the biological father .of the child. Respondent contends that this "oversimplified interpretation of N.C. Gen. Stat. §§ 49-10 and 49-12.1 [could lead to] many absurd results[.]"[2] However, the legitimation of a child is a separate and distinct issue from who shall have custody and control of the child. The concerns raised by Respondent can be, and properly are, addressed in other proceedings, such as custody, adoption, or termination of parental rights, where the best interest of the child is paramount.

---

2. For example, Respondent poses a hypothetical scenario where a petitioner is a convicted murderer who has never contributed any support to the minor child but who presents genetic testing results that show a 99.99 percent probability that he is the child's biological father, and all of the parties to the proceeding acknowledge that he is the biological father of the child. Respondent argues that if the convicted murderer were entitled to summary judgment granting his petition to legitimate, "[s]urely, that result is not what our legislature intended[.]"

IN RE PAPATHANASSIOU

[195 N.C. App. 278 (2009)]

Normally, the factual issue of paternity, when premised on a presumption of legitimacy, should be presented to and resolved by a jury. *Locklear*, 314 N.C. at 421, 334 S.E.2d at 52. However, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [a] party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2005). "A 'genuine issue' is one that can be maintained by substantial evidence." *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000). On appeal of a trial court's grant of a motion for summary judgment, we consider whether, on the basis of materials supplied to the trial court, there was a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Id.* Evidence presented by the parties is viewed in the light most favorable to the non-movant. *Id.*

In this case, DNA tests indicated a 99.99 percent probability that Petitioner is the biological father of the child. Furthermore, Respondent offered no evidence to the contrary, and admitted that he is not the biological father of the child. Petitioner, having provided conclusive evidence that he is the child's biological father, established that there was no remaining issue of fact to be determined in the legitimation proceeding. Therefore, the trial court did not err in entering summary judgment in Petitioner's favor.[3]

AFFIRMED.

Chief Judge MARTIN and Judge McGEE concur.

---

3. Although Respondent additionally argues that the Clerk erred in ordering legitimation upon Petitioner's Petition to Legitimate, for the reasons stated above, we conclude that the Clerk did not err in entering the 18 August 2005 Order to Legitimate.