SHEILA HUFF O'BRIANT v. HUBERT RONNIE O'BRIANT

No. 8314DC991

(Filed 18 September 1984)

1. **Divorce and Alimony § 25.9— child custody—change of circumstances—sufficiency of evidence**

Evidence was sufficient to support the trial court's finding that there had been a change in circumstances sufficiently substantial to warrant modification of a child custody order where it tended to show that plaintiff moved with the child from Durham County to Bluefield, Virginia; the move was accompanied by increased difficulty in the exercise of visitation rights by defendant and by repeated frustration of defendant's attempts to talk with his child by phone; plaintiff made many statements to the child which were detrimental to his emotional and psychological welfare; the child was upset on numerous occasions following interactions with his mother; and the child expressed a very strong preference to live with his father. G.S. 50-13.7(a).

O'Briant v. O'Briant

2. **Divorce and Alimony § 25.9— child custody—emotional fitness of parent—sufficiency of evidence**

The trial court's wording that plaintiff suffered from "very serious psychiatric problems" in concluding that she was not then emotionally fit for custody of her child, though improper, was not prejudicial to plaintiff, since the court's conclusion with regard to fitness, based on plaintiff's conduct and the court's observation of plaintiff over a nine-day period, was supported by the findings of fact which were in turn supported by the evidence.

3. **Contempt of Court § 6.2— interference with visitation rights—failure to appear—filing action in another state—sufficiency of evidence of contempt**

The trial court did not err in concluding that plaintiff was in willful contempt of prior court orders where the evidence showed that plaintiff repeatedly interfered with defendant's telephone visitation of their child, and plaintiff failed to appear for scheduled hearings; however, the trial court erred in holding plaintiff in contempt on the ground that she willfully attempted to avoid, ignore and circumvent lawful orders of the court by filing an action in Virginia.

Judge WELLS dissenting in part.

APPEAL by plaintiff from *LaBarre, Judge*. Order entered 24 February 1983 in District Court, DURHAM County. Heard in the Court of Appeals 20 August 1984.

This is a civil action instituted by plaintiff mother for custody and support of the minor child born of the marriage between plaintiff and defendant. On 25 November 1980 a consent order was entered whereby plaintiff received custody of the child and defendant was ordered to pay child support. On 12 February 1982 defendant father filed a motion in the cause seeking a change of custody of the child and asking that plaintiff be found to be in contempt of previous orders entered by the court. On 24 February 1983 Judge LaBarre entered an order, which consumes thirty pages in the record, granting custody of the child to defendant, giving plaintiff limited and conditional visitation rights, and sentencing plaintiff to 120 days in jail for four separate contempt violations, such term being stayed on condition that plaintiff fully comply with all provisions of the order. Plaintiff appealed.

*Robert A. Hassell for plaintiff, appellant.*

*Arthur Vann for defendant, appellee.*

HEDRICK, Judge.

The procedural history of this case, though lengthy, is necessary to an understanding of the issues raised by appellant and so is fully outlined below:

On 31 October 1980 Sheila O'Briant filed suit against defendant seeking, among other things, custody of and support for Ronald O'Briant, the only child born of the marriage between plaintiff and defendant. A consent order was entered on 25 November 1980 whereby plaintiff was awarded custody of Ronald, then four years old, and support for the child. The order contained detailed provisions concerning defendant's visitation rights, including a clause stating that defendant might have Ronald visit him on alternate weekends. The consent order further provided that each party had the right to make "a reasonable number of telephone calls" to the child. In July 1981, plaintiff moved from Durham, North Carolina, to Bluefield, Virginia, where she lives with her mother, Virginia Huff. On 15 October 1981 defendant filed a motion in the cause in which he alleged that plaintiff was "curtailing telephone calls" to his son and "refusing visitation on weekends when this defendant has the right to have his son with him. . . ." That same day *ex parte* orders were issued directing plaintiff to honor defendant's visitation rights and to appear before the court and show cause "why the defendant's visitation right should not be clarified and made more certain due to the change of circumstances that have come about since November 25, 1980." On 19 October plaintiff filed a motion in the cause in which she alleged that defendant "grabbed the minor child" on 16 October 1981 approximately six hours before his visitation was scheduled, and that defendant had failed to return Ronald on Sunday evening as required by court order. Plaintiff asked that defendant be held in contempt for his actions and, in a later motion, that she be awarded attorney's fees. Defendant responded, claiming that his actions were prompted by plaintiff's announced intention to defy the court orders relating to defendant's visitation rights. On 22 December 1981 Judge La-Barre entered an order in which he made the following pertinent findings and conclusions:

VII. That the evidence heard herein bares out the fact that there is probable cause to believe that the plaintiff vio-

O'Briant v. O'Briant

lated or intended to violate the prior Orders of this Court by attempting to refuse or alter visitation as previously ordered and refusing to allow the defendant certain phone calls with the minor child as previously ordered herein.

VIII. That the actions of the plaintiff regarding the defendant's visitation with the minor child in attempting to alter or prevent same, was the actual cause of the plaintiff having to engage her attorney to do the work herein. That the plaintiff, therefore, is entitled to no attorney's fees in this case.

IX. That due to the change of residence of the plaintiff and the burden placed on the defendant by this change of residence in exercising visitation with the minor child, the visitation originally set out in the Consent Judgment should be altered and that the plaintiff should share in the expense of the exercise of these visitation privileges by the defendant as hereinafter ordered.

X. That it would be in the best interests of the minor child that the defendant have unlimited and unmonitored phone calls with said child so long as they not interfere with the child's welfare and are not intended to harass the child or the plaintiff.

Judge LaBarre's order held that defendant was not in contempt and modified the provisions of the 25 November 1980 consent order relating to visitation and telephone calls between defendant and Ronald in accordance with the above-quoted findings and conclusions.

On 21 January 1982 plaintiff filed an action in Virginia, seeking modification of visitation. The record contains no indication of the final action, if any, taken by the Virginia court on plaintiff's motion. On 12 February 1982 defendant filed a motion in the cause in which he sought custody of Ronald and asked that plaintiff be held in contempt of the previous orders of the court. Defendant father alleged in this motion that he had made 180 attempts to reach his son by telephone, with success in only four instances. Mr. O'Briant further alleged that plaintiff had stated that she intended to prevent future contact between him and the child. Defendant pointed to plaintiff's interference with his attempts to

call Ronald and to plaintiff's alleged efforts to "demean and tarnish" him in Ronald's eyes as evidence that a substantial change of circumstances justified modification of the original custody order. On 12 February an order was issued directing Sheila O'Briant to appear at a hearing on defendant's motion on 25 February 1982. The order was served on Ms. O'Briant on 17 February. On 24 February plaintiff's attorney, Joseph Marion, filed a motion to withdraw as counsel, alleging that he was "no longer able to communicate effectively with the Plaintiff." On 3 March Judge LaBarre filed an order which stated that plaintiff failed, without excuse or reason, to attend the 25 February hearing and which continued the matter until 12 March, at which hearing plaintiff was ordered to appear. This order was served on Mr. Marion, plaintiff's counsel of record. On 12 March plaintiff again failed to attend the scheduled court hearing, again offering "no reason or excuse for her absence." The matter was continued once more, and on 28 April Judge LaBarre issued an order directing plaintiff to attend a hearing on 3 May and further directing the parties to "produce and bring before this Court the minor child" for the 3 May hearing. Plaintiff did not attend this hearing, nor did she attend the hearing held the next day, the matter having been continued once again. On 4 May the court conducted a hearing despite plaintiff's absence and awarded temporary custody of Ronald to defendant. At the conclusion of the hearing on 4 May Mr. Marion was allowed to withdraw as counsel for plaintiff. On 14 May an order was entered awarding temporary custody of the child to defendant, permitting plaintiff visitation rights at defendant's residence and in his company, and finding plaintiff to be in contempt of previous orders of the court. No order was entered at this time in regard to the court's finding of contempt. Various motions, not relevant to the questions presently before us, were filed by both parties. On 2 February 1983 the matter came on for hearing on defendant's motion in the cause seeking permanent custody of Ronald and asking that Mrs. O'Briant be held in contempt. Following a hearing that continued for ten days, Judge LaBarre made numerous findings of fact and the following pertinent conclusions of law:

> 1. [T]here has been a substantial and material change of circumstances since the entry of the Consent Order entered on November 25, 1980 which materially affects the child's

O'Briant v. O'Briant

physical, psychological, and emotional well-being so as to warrant modification by the Court with reference to the custody and visitation. That these changes have occurred prior to and subsequent to the temporary custody Order entered May 4, 1982.

2. That the Defendant is a fit and proper person to have the primary care and custody of the minor child and the best interest of the child dictates that custody be awarded to the Defendant.

3. That the Plaintiff is entitled to limited rights of visitation with her son. Based upon the Plaintiff's conduct which the Court finds to be detrimental to the emotional and psychological welfare of her child, and based further upon reasonable grounds including nine days of in Court observation to conclude that she has some very serious psychiatric problems, and the Court further concludes that visitation should be subject to several conditions.

4. The Plaintiff has willfully, wantonly, and without lawful excuse violated the lawful Orders of this Court and is in contempt of Court as follows:

A. The Plaintiff willfully violated this Court's Order of December 22, 1981, regarding visitations to be allowed to the Defendant.

B. The Plaintiff willfully failed to appear as Ordered at the February 25, 1982 hearing.

C. The Plaintiff willfully failed to appear as Ordered at the hearing set for March 12, 1982.

D. The Plaintiff willfully attempted to avoid and ignore and circumvent the lawful Orders of this Court by violating the provisions of Chapter 50 and 50(a) of the Uniformed [sic] Code by filing an action in the State of Virginia.

Based on extensive findings of fact and the above-quoted conclusions of law, the court entered an order to the following effect: defendant was awarded primary custody of Ronald, subject to plaintiff's visitation rights, which were to be exercised in accordance with detailed conditions set out by the trial court. Under the

terms of the court order plaintiff was sentenced to thirty days in the Durham County jail for each contempt violation, resulting in a total term of 120 days, with sentence stayed on condition that plaintiff comply with all provisions of the order.

[1] In her first assignment of error plaintiff contends that the court erred in concluding that "there had been a change in circumstances sufficiently substantial to warrant a modification of a previous custody order where neither the evidence nor any finding could support such a conclusion."

N.C. Gen. Stat. Sec. 50-13.7(a) provides that an order relating to custody of a minor child may be modified at any time "upon motion in the cause and a showing of changed circumstances." " 'Changed circumstances' as used in the statute . . . means such a change as affects the welfare of the child." *In re Harrell*, 11 N.C. App. 351, 354, 181 S.E. 2d 188, 189 (1971). Such changed circumstances must be substantial, i.e., "[i]t must be shown that circumstances have so changed that the welfare of the child will be adversely affected unless the custody provision is modified." *Rothman v. Rothman*, 6 N.C. App. 401, 406, 170 S.E. 2d 140, 144 (1969). In reviewing the determination of the trial court in custody matters, "[t]he court's findings of fact are conclusive on appeal if there is any competent evidence to support them, even though the evidence might sustain findings to the contrary, and even though some incompetent evidence may also have been admitted." *Pritchard v. Pritchard*, 45 N.C. App. 189, 196, 262 S.E. 2d 836, 840 (1980). Finally, we note that "the trial judge, having the opportunity to see and hear the parties and the witnesses, is vested with broad discretion in cases involving the custody of children." *Id.*

Applying these principles to the instant case, we first point out that the court found that plaintiff's conduct is "detrimental to the emotional and psychological welfare of her child." This crucial finding is buttressed by numerous findings relating to specific statements made by plaintiff to Ronald and to specific instances in which plaintiff behaved in a manner detrimental to the child. Merely illustrative of the numerous findings made by the court to this effect are the following:

18. That subsequent to the Plaintiff's move to Virginia in July of 1981, the Defendant began experiencing difficulty

with telephone communication with his minor son, then age five and a half, in Bluefield. . . . That the Defendant called on a number of occasions and was refused phone conversations by the Plaintiff as "punishment." The Plaintiff stated to the Defendant that she would get an unlisted phone number or change her phone number or even move from Bluefield, Virginia in order to avoid his calls.

. . .

28. During January and February, 1982, the Defendant continued to experience substantial difficulty with phone visitation with his minor son . . . [with] only several successful telephone calls completed out of 180 attempts between November 29, 1981 and February 9, 1982. . . . A number of calls resulted in the phone being taken off the hook or answered and hung up.

. . .

42. Subsequent to the 4th of May, 1982, the Plaintiff, a psychology major, set upon a course of conduct calculated to willfully disrupt the lives of the Defendant and his family, and the minor child, and deviously designed to seriously damage the emotional well-being of her seven year old son as hereinafter set forth.

These events occurred during the Plaintiff's visitation of May 4, 5, 6, 7 and 9, 1982.

That on May 4, 1982 at about 9:15 P.M. the Plaintiff came into the bedroom where the minor child was in bed and told him about the things he was missing in Virginia and that she had gifts and surprises for him and how much his friends and his dog missed him. That the Plaintiff was told by the minor child that he wanted to try living with his father, the Defendant.

. . .

That on the evening of May 6, 1982, the Plaintiff and her mother returned to the home of the Defendant to visit with Ronald who was playing with a puppy that had been given to him by some friends. That the Plaintiff then told the child that his grandmother (Virginia Huff—the Plaintiff's mother)

had gotten him a kitten, and that when the child asked the grandmother about his kitten she was completely bewildered by this indicating to the Defendant that this "kitten story" was untrue.

A short time later after the Plaintiff had left, she called the minor child asking him what he wanted to do about his dog in Virginia, inferring that since he had a dog here he didn't need one in Virginia.

That on Sunday, May 9, 1982, Mother's Day, the Plaintiff, the mother of this seven year old child, returned to the home of the Defendant and proceeded to hand to her son a small paper bag. That the child, thinking that this was a toy brought by the Plaintiff, opened the bag and found therein a card and a candle that he had bought for his grandmother, Virginia Huff, and the present that he had bought for the Plaintiff. This greatly upset the minor child and he could not understand why his gifts were returned.

That further on that evening the Plaintiff, who had bought the minor child a water pistol, took him in the back yard and sprayed the child with water soaking his shirt and pants notwithstanding the fact that just two days before she had shown such concern about the child having a cold.

43. At the May 10, 1982 visit between the Plaintiff and her child at the home of Mrs. Wilson, there was an episode in which the child asked his mother on a number of occasions "if she loved him, why didn't she ever tell him that she did."

44. On May 13, 1982, the Plaintiff told the child, "I guess they pulled your teeth," meaning the Defendant and his family, and that the Defendant "will beat you."

. . .

48. On June 3, 1982, there was a conversation between the Plaintiff and the minor child wherein the Plaintiff said that the Defendant "doesn't want me to see you."

. . .

56. On June 25, 1982, the Plaintiff stated to the minor child, a seven year old little boy, her biological son, that she

was going to change his room around and let other kids stay in his room since he was not coming home, and the child indicated that he wanted his room left as it was. And she stated that he, the child, shouldn't worry about his toys, if he was down there in Durham. The Plaintiff further stated that there was a little boy down the street who had his dog killed and she asked her minor son, her seven year old son, did he mind if we gave him your dog, that he had seen Pierre, his dog, and couldn't this little boy have your dog, and the child said "No, you can't", and he cries. And she further stated did he mind if she moved his room around and moved his fish around, and the child again pleaded "No." And the Plaintiff stated that she felt sorry for the kids here, that they cried, and she cried, and that she had talked to another Judge and that Judge said that he shouldn't have to live down there in Durham County and that she, the Plaintiff, was not coming down to visit anymore, that she was treated badly by the child's father, and the child cried and she hung up the telephone.

57. On July 2, 1982, there were two conversations, and the first conversation was where she inquired as to where the child was "this morning," and the child said that he didn't remember, and she asked him "whether or not he was losing his mind," and she stated that she was not going to bring his toys down to Durham, and that she was going to give his toys away, and the child pleaded that "that was not fair", and he cried and she hung up in his face.

Our examination of the record reveals ample evidentiary support for the findings of the trial judge regarding plaintiff's treatment of Ronald. Nor can it be seriously questioned that such treatment is detrimental to the child's welfare. In addition to evidence tending to show that Ronald has become visibly upset on numerous occasions following interactions with his mother, the record also contains the following statements by Dr. Renee Schoenfeld, concerning the results of a psychological evaluation of the child: "It is obvious that Ronald is already disturbed and in great conflict regarding the separation and divorce proceedings. The child is worried about his parents being angry with each other. The 'battle' arrangements will certainly only become worse for the child as time goes on."

The record contains additional evidence tending to support Judge LaBarre's conclusion that a substantial change in circumstances has occurred. First, it is undisputed that plaintiff changed her place of residence some eight months after entry of the consent order. While it is true that a parent's change of residence does not itself amount to a substantial change of circumstances, the effects of such a move on the welfare of the child may well amount to a change of circumstances requiring modification of the original custody order. *Gordon v. Gordon*, 46 N.C. App. 495, 265 S.E. 2d 425 (1980). In the instant case, plaintiff's move to Virginia was accompanied by increased difficulty in the exercise of visitation rights by defendant father and by repeated frustration of defendant's attempts to talk with Ronald on the telephone. The court's findings of fact in this regard are supported by the evidence and lend further support to the crucial conclusion regarding a substantial change of circumstances. Also significant, although not controlling, is the court's finding that Ronald has expressed a "very strong preference" to live with his father. In sum, then, we hold that the challenged conclusion finds abundant support in the court's findings of fact, which are in turn amply supported by the evidence. The assignment of error is without merit.

[2] By her next assignment of error, plaintiff challenges the following conclusion of law made by the trial court:

> 3. That the Plaintiff is entitled to limited rights of visitation with her son. Based upon the Plaintiff's conduct which the Court finds to be detrimental to the emotional and psychological welfare of her child, and based further upon reasonable grounds including nine days of in Court observation to conclude that she has some very serious psychiatric problems, and the Court further concludes that visitation should be subject to several conditions.

Plaintiff contends that this conclusion is supported neither by the evidence nor by the findings of fact made by the trial judge.

It is well-settled that the trial court, in deciding cases involving the custody of children, may be called upon to evaluate the emotional stability and fitness of the parties. *See Spence v. Durham*, 283 N.C. 671, 198 S.E. 2d 537 (1973). It is equally clear that, in making such an evaluation, the court, sitting as the trier

of fact, may exercise its "own reason and common sense, and use the knowledge acquired by [its] observation and experience in everyday life." 1 Brandis on North Carolina Evidence Sec. 15 (2d rev. ed. 1982).

In the instant case, we think Judge LaBarre's choice of words, in concluding that plaintiff suffers from "serious psychiatric problems," was unfortunate. Such a conclusion, considered in its technical sense, relates to the underlying causes of plaintiff's behavior and, strictly speaking, may well exceed the limits of the trial court's expertise. We think such hypertechnicality ill-serves the needs of the child, however, and point out that the court's conclusion, considered in context, amounts to a ruling that plaintiff is not presently emotionally fit for custody of Ronald. This conclusion, based on plaintiff's conduct and the court's observation of plaintiff over a nine-day period, is supported by the findings of fact which are in turn supported by the evidence. Furthermore, any error the court may have committed in concluding the plaintiff suffers from "serious psychiatric problems" was in no way prejudicial to plaintiff. The crucial portion of the above-quoted conclusion has been overlooked by plaintiff: "*Based upon the Plaintiff's conduct* which the Court finds to be *detrimental to the emotional and psychological welfare of her child* . . . visitation should be subject to several conditions." (Emphasis added.) Thus, even were we to agree with plaintiff's contention that the court erred in concluding that plaintiff has "serious psychiatric problems," the result would be no different. The assignment of error is without merit.

Plaintiff next contends the court erred "in making numerous findings of fact which are unsupported and contrary to the evidence." In her argument in this regard, plaintiff asks this Court "to review the Record and the transcript for an absence of evidence, only as it deems necessary to the resolution of the issue of changed circumstances." This we have done, and we find no error.

[3] Finally plaintiff contends the court erred in its conclusion that plaintiff was in willful contempt of prior court orders. The court based its ruling in this regard on the following grounds:

A. The Plaintiff willfully violated this Court's Order of December 22, 1981, regarding visitations to be allowed to the Defendant.

B. The Plaintiff willfully failed to appear as Ordered at the February 25, 1982 hearing.

C. The Plaintiff willfully failed to appear as Ordered at the hearing set for March 12, 1982.

D. The Plaintiff willfully attempted to avoid and ignore and circumvent the lawful Orders of this Court by violating the provisions of Chapter 50 and 50(a) of the Uniformed [sic] Code by filing an action in the State of Virginia.

"In contempt proceedings the judge's findings of fact are conclusive on appeal when supported by any competent evidence and are reviewable only for the purpose of passing on their sufficiency to warrant the judgment." *Clark v. Clark*, 294 N.C. 554, 571, 243 S.E. 2d 129, 139 (1978).

Our examination of the record reveals ample evidence supporting the court's finding that plaintiff repeatedly interfered with defendant's telephone visitation with Ronald, in violation of the court order dated 22 December 1981. That this violation was willful cannot be doubted in light of the evidentiary support for the court's finding that "[a] number of calls resulted in the phone being taken off the hook or answered and hung up." We also believe the court's findings regarding plaintiff's failure to appear for two scheduled hearings are supported by the evidence. The record shows that plaintiff had adequate notice in both instances: the order directing plaintiff to appear at the 25 February 1982 hearing was served on plaintiff on 17 February. Plaintiff's attorney, present in court on 25 February, was informed on that date that the case was continued until 12 March, and a copy of the order directing plaintiff to appear at the 12 March hearing was mailed to her and to her attorney on 3 March 1982. Plaintiff's contention that she may not be held in contempt for failure to attend hearings which were continued and thus did not take place, while novel, is entirely unpersuasive. It belabors the obvious to point out that plaintiff's failure to attend may well have been a factor in the court's decision to continue the case. In any event, the evidence supports the court's conclusion that plaintiff's failure to appear as ordered was willful and without lawful excuse. Finally we note that, contrary to plaintiff's contention, plaintiff had more than adequate notice that the question whether she should

be held in contempt of prior court orders would be one of the subjects of the hearing beginning on 2 February 1983.

While we affirm the court's decision in relation to three of the four grounds outlined above, we reach a different result in regard to the fourth basis for the court's ruling. We are aware of no decision, and we are cited to none, holding that a person may be held in contempt for filing an action in another forum in the absence of a court order enjoining or prohibiting such conduct. If, as defendant contends, the trial court sought to hold plaintiff in contempt for "using the [Virginia] proceeding as a pretext for justifiable reasons in not coming to court as ordered" on 3 May 1982, the court should have identified plaintiff's failure to attend the 3 May hearing as the action violative of the prior court order. Thus, that portion of Judge LaBarre's order finding plaintiff in contempt for filing an action in Virginia and ordering her to serve thirty days in jail, conditioned on her compliance with all other provisions of the order, must be vacated.

The result is: that portion of the order entered 24 February 1983 awarding custody of the child to the defendant with limited and conditional visitation privileges to the plaintiff is affirmed; that portion of the order entered 24 February 1983 finding plaintiff in contempt of prior court orders on the three grounds discussed above and ordering her to serve thirty days in jail for each contemptuous act is affirmed; that portion of the order entered 24 February 1983 finding plaintiff in contempt for filing an action in Virginia is vacated.

Affirmed in part, vacated in part.

Chief Judge VAUGHN concurs.

Judge WELLS dissents in part.

Judge WELLS dissenting in part.

I dissent from that part of the majority opinion which affirms the trial court's finding plaintiff in contempt and sentencing her to 30 days in jail (two counts) for failing to obey the court's order to appear at hearings in the case. Whether plaintiff was found in criminal or civil contempt was not mentioned by the trial court,

but I do not agree that either would have been proper on these facts under the provisions of Chapter 5 of the General Statutes. In all other respects, I concur.