CAROL J. PULLIAM v. FREDERICK J. SMITH

No. 499PA96

(Filed 30 July 1998)

**1. Divorce and Separation § 359 (NCI4th)— child custody— motion to modify—change of circumstances—adversity**

The Court of Appeals erred by concluding that the party seeking modification of child custody based upon changed circumstances must show that the change in circumstances has had or will have an adverse effect on the child. Courts must consider and weigh all evidence of changed circumstances which affect or will affect the best interests of the child, both those which will have salutary effects upon the child and those which will have adverse effects; either may support a modification of custody on the ground of a change in circumstances. A statement in *Thomas v. Thomas*, 259 N.C. 461, referring to a change of circumstances adversely affecting the children, merely reflected the facts in that case and was *obiter dictum,* and the Court of Appeals' decisions in *Rothman* v. *Rothman,* 6 N.C. App. 401 and subsequent cases are disapproved to the extent they require a showing of adversity. However, it must always be remembered that a decree of custody is entitled to such stability as would end vicious litigation.

**2. Divorce and Separation § 370 (NCI4th)— change of child custody—homosexual cohabitation—findings sufficient**

The Court of Appeals erred by holding that there was insufficient evidence to support the trial court's finding of a substantial change of circumstances affecting the welfare of two minor children which would warrant a change of custody where defendant-father had been granted physical custody in California pursuant to a consent decree; his homosexual partner, Tim Tipton, moved into defendant's home with the children in North Carolina several years later; and the trial court ordered that plaintiff-mother be awarded the exclusive care, custody and control of the two minor children, with defendant having visitation. The Court of Appeals did not afford sufficient weight and deference to the well-established law which limits appellate court review of custody orders; absent a total lack of substantial evidence to support the trial court's findings, such findings will not be disturbed on appeal, and "substantial evidence" has been defined as such relevant evidence as a reasonable mind might accept as adequate to

PULLIAM v. SMITH

[348 N.C. 616 (1998)]

support a conclusion. Here, most of the trial court's findings are uncontested and the remaining are supported by substantial evidence. Activities such as the regular commission of sexual acts in the home by unmarried people, failing and refusing to counsel the children against such conduct while acknowledging this conduct to them, allowing the children to see unmarried persons known by the children to be sexual partners in bed together, keeping admittedly improper sexual material in the home, and the partner taking the children out of the home without their father knowing their whereabouts support the trial court's findings of improper influences which are detrimental to the best interests and welfare of the children. Moreover, the trial court could reasonably find that defendant's activity will likely create emotional difficulties for the two minor children from substantial evidence that one of the children became emotionally distraught when told of his father's activity, that he cried, grasped his mother, and asked her to get him out of defendant's home, that he told his stepfather that he wanted his mother to come and get him, and that he had expressed confusion over defendant's homosexual relationship. The trial court did not rely on the mere fact that defendant is a homosexual or a practicing homosexual, and the Supreme Court does not hold that the mere homosexual status of a parent is sufficient to deny such parent custody.

Justice ORR concurring in the result.

Justice WEBB dissenting.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a decision of the Court of Appeals, 124 N.C. App. 144, 476 S.E.2d 446 (1996), reversing a judgment entered by Burgin, J., on 30 June 1995 in District Court, Henderson County. Heard in the Supreme Court 14 May 1997.

*Jackson & Jackson, by Phillip T. Jackson, for plaintiff-appellant.*

*Lambda Legal Defense and Education Fund, Inc., by Beatrice Dohrn; and N.C. Gay and Lesbian Attorneys, by Ellen W. Gerber and Sharon A. Thompson, for defendant-appellee.*

*Stam, Fordham & Danchi, P.A., by Paul Stam, Jr.; and James F. Lovett, Jr., on behalf of North Carolina Family Policy Council, amicus curiae.*

PULLIAM v. SMITH

[348 N.C. 616 (1998)]

*Michael P. Adams and Tharrington Smith, by Jaye Meyer, on behalf of American Civil Liberties Union; and Deborah Ross on behalf of ACLU of North Carolina Legal Foundation, amici curiae.*

*Myrna Ann Miller on behalf of National Association of Social Workers, North Carolina Chapter, and National Association of Social Workers, amici curiae.*

MITCHELL, Chief Justice.

The overriding question presented for review is whether there was sufficient evidence to support the trial court's finding of a substantial change of circumstances affecting the welfare of two minor children which would warrant a change of custody. The Court of Appeals held that there was not. Since we conclude that the trial court's judgment modifying a prior order placing custody of the children with their father is supported by adequate findings of fact based on substantial evidence, we also conclude that the trial court's judgment was free of error. We therefore reverse the decision of the Court of Appeals.

[1] As a preliminary matter, we address that portion of the Court of Appeals' decision which concluded that the party seeking modification of custody must show "that the change [in circumstances] has had an *adverse* effect on the child or will likely or probably have such an effect unless custody is altered." *Pulliam v. Smith,* 124 N.C. App. 144, 147, 476 S.E.2d 446, 449 (1996) (emphasis added). This Court has never required the party moving for a modification of custody to show that the change in circumstances has had or will have an *adverse* consequence upon the child's well-being, and we decline to do so now.

The controlling statute provides that, when an order for custody of a minor child has been entered by a court of another state, a court of this state may, upon a showing of changed circumstances, enter a new order for custody. N.C.G.S. § 50-13.7(b) (1995). In *Blackley v. Blackley,* 285 N.C. 358, 204 S.E.2d 678 (1974), we interpreted N.C.G.S. § 50-13.7(b) which mandates a "showing of changed circumstances." In that decision, we held:

[T]he modification of a custody decree must be supported by findings of fact based on competent evidence that there has been

a substantial change of circumstances affecting the welfare of the child, and the party moving for such modification assumes the burden of showing such change of circumstances.

*Id.* at 362, 204 S.E.2d at 681. In *Blackley*, we held that the trial court erred in modifying a prior order awarding custody because the evidence was insufficient to show a substantial change of circumstances affecting the welfare of the child; we neither held nor implied that to establish a change of circumstances which would justify a modification of custody, it must always be shown that the change of circumstances adversely affects or will adversely affect the child.

The welfare of the child has always been the polar star which guides the courts in awarding custody. *Shepherd v. Shepherd*, 273 N.C. 71, 75, 159 S.E.2d 357, 361 (1968). In reviewing a request for modification of custody, courts may not limit the inquiry as to what constitutes the best interests of the child solely to a consideration of those changes in circumstances which it has found to exist and which may *adversely* affect that child. It is true that we have stated in one case that, "We cannot forecast the future, but if there should be a change of circumstances adversely affecting the welfare of these children, the court is empowered to act . . . ." *Thomas v. Thomas*, 259 N.C. 461, 467, 130 S.E.2d 871, 876 (1963). However, this statement in the form of *obiter dictum* should not be read to indicate that a court's consideration of changed circumstances should be limited to those having adverse consequences for the child. The facts in *Thomas* involved a situation in which the children were affected adversely if at all, and our statement there merely reflected those facts. Further, our statement that a change of circumstances adversely affecting children would empower the court to act is not equal to, and should not be read as, a holding that a court could not change custody where a substantial change of circumstances had occurred which would beneficially affect the child if custody should be modified. Rather, courts must consider and weigh all evidence of changed circumstances which affect or will affect the best interests of the child, both changed circumstances which will have salutary effects upon the child and those which will have adverse effects upon the child. In appropriate cases, either may support a modification of custody on the ground of a change in circumstances.

In *Rothman v. Rothman*, 6 N.C. App. 401, 170 S.E.2d 140 (1969), the Court of Appeals wrote, "Professor Lee points out in his treatise on North Carolina Family Law that there must generally be a sub-

stantial change of circumstances before an order of custody is changed." *Id.* at 406, 170 S.E.2d at 144. The Court of Appeals then incorrectly held, "It must be shown that circumstances have so changed that the welfare of the child will be adversely affected unless the custody provision is modified." *Id.* The Court of Appeals' decision in *Rothman*, insofar as it mandates that the changed circumstances analysis be limited to a showing of *adverse* effects on the child, is contrary to N.C.G.S. § 50-13.7(b) and is disapproved. We also disapprove of subsequent Court of Appeals cases to the extent they require a showing of adversity to the child as a result of changed circumstances to justify a change of custody.[1]

We emphasize that an adverse effect upon a child as the result of a change in circumstances is and remains an acceptable factor for the courts to consider and will support a modification of a prior custody order. However, a showing of a change in circumstances that is, or is likely to be, beneficial to the child may also warrant a change in custody. We conclude this analysis by noting that, in either situation, it must always be remembered that

> [a] decree of custody is entitled to such stability as would end the vicious litigation so often accompanying such contests, unless it be found that some change of circumstances has occurred affecting the welfare of the child so as to require modification of the order. To hold otherwise would invite constant litigation by a dissatisfied party so as to keep the involved child constantly torn between parents and in a resulting state of turmoil and insecurity. This in itself would destroy the paramount aim of the court, that is, that the welfare of the child be promoted and subserved.

---

1. *E.g.*, *Wiggs v. Wiggs*, 128 N.C. App. 512, 495 S.E.2d 401 (1998); *Pulliam v. Smith*, 124 N.C. App. 144, 476 S.E.2d 446; *MacLagan v. Klein*, 123 N.C. App. 557, 473 S.E.2d 778 (1996), *disc. rev. denied*, 345 N.C. 343, 483 S.E.2d 170 (1997); *Speaks v. Fanek*, 122 N.C. App. 389, 470 S.E.2d 82 (1996); *Garrett v. Garrett*, 121 N.C. App. 192, 464 S.E.2d 716 (1995); *Benedict v. Coe*, 117 N.C. App. 369, 451 S.E.2d 320 (1994); *Dobos v. Dobos*, 111 N.C. App. 222, 431 S.E.2d 861 (1993); *Ramirez-Barker v. Barker*, 107 N.C. App. 71, 418 S.E.2d 675 (1992); *Perdue v. Perdue*, 76 N.C. App. 600, 334 S.E.2d 86 (1985); *Wehlau v. Witek*, 75 N.C. App. 596, 331 S.E.2d 223 (1985); *O'Briant v. O'Briant*, 70 N.C. App. 360, 320 S.E.2d 277, *disc. rev. denied*, 312 N.C. 623, 323 S.E.2d 923 (1984), *rev'd in part on other grounds*, 313 N.C. 432, 329 S.E.2d 370 (1985); *Barnes v. Barnes*, 55 N.C. App. 670, 286 S.E.2d 586 (1982); *Gordon v. Gordon*, 46 N.C. App. 495, 265 S.E.2d 425 (1980); *Daniels v. Hatcher*, 46 N.C. App. 481, 265 S.E.2d 429, *disc. rev. denied*, 301 N.C. 87 (1980); *Pritchard v. Pritchard*, 45 N.C. App. 189, 262 S.E.2d 836 (1980); *Dishman v. Dishman*, 37 N.C. App. 543, 246 S.E.2d 819 (1978); *Searl v. Searl*, 34 N.C. App. 583, 239 S.E.2d 305 (1977).

*Shepherd*, 273 N.C. at 75, 159 S.E.2d at 361. Having resolved the fore-
going questions of law, we turn to the evidence presented and the
issue raised by the parties in this case.

[2] Uncontroverted evidence before the trial court tended to show
that plaintiff Carol J. Pulliam and defendant Frederick J. Smith are
the mother and father of two boys, Frederick Joseph Smith, II (Joey)
and Kenneth August Smith (Kenny). Plaintiff-mother and defendant-
father were married in California in November 1982. They separated
in 1990 when plaintiff went to live in Kansas with William Pulliam.
Plaintiff and defendant were divorced in November 1991. At that
time, Joey was six years old, and Kenny was three years old. The par-
ties entered into a consent decree regarding the custody of the chil-
dren. Pursuant to the decree, the parties had joint legal custody, and
defendant-father had physical custody of the children. Until August
1994, the children lived with defendant and his grandmother in North
Carolina. In February 1993, plaintiff married Mr. Pulliam, and they
have since resided in Wichita, Kansas. Plaintiff-mother had the boys
with her for two months during the summer and at Christmas each
year. In August 1994, Tim Tipton moved into defendant's home, and
defendant's grandmother moved out a month later. Defendant-father
and Mr. Tipton are homosexuals.

The trial court made findings of fact supported by evidence,
which included, *inter alia*, the following:

27. That Tim Tipton first moved into the home located on 9
Roberts Street in Fletcher, North Carolina around March of
1994.

28. That Tim Tipton and the Defendant often kiss on the check
[sic] and sometimes on the lips in front of the two minor chil-
dren. That Tim Tipton and the Defendant would often hold
hands in front of the two minor children.

29. Tim Tipton and the Defendant both testified that they
engaged in oral sex, in that Tim Tipton would about once a
week place his mouth on the penis of the Defendant. The
Defendant would also place his mouth on the penis of Tim
Tipton. The Court accordingly makes this as a finding of fact.

. . . .

32. That Tim Tipton and the Defendant engaged in the acts
described in paragraph 29 above while the minor children

**PULLIAM v. SMITH**

[348 N.C. 616 (1998)]

were present in the home. That the minor children share the same bedroom and the said bedroom of the minor children is directly across the hall from the bedroom occupied by the Defendant and Tipton. That the Defendant and Tipton would engage in the acts described in paragraph 29 above while the children were a short distance away.

33. The Defendant and Mr. Tipton on at least one (1) occasion had a party for homosexuals at the home located at 9 Roberts Road in Fletcher, North Carolina. That the occasion was an anniversary party marking the first year since the Defendant and Tim Tipton meet [sic] at a homosexual bar in Asheville, North Carolina.

34. The Defendant and Mr. Tipton on at least three (3) occasions since first meeting have gone to an establishment that caters to homosexuals.

35. Mr. Tipton keeps in the bedroom he shares with the Defendant pictures of "drag queens". These are pictures of men dressed like women. These pictures are not under a lock, and it is possible for the children to gain access to the pictures.

36. Mr. Tipton testified that these materials (photographs of "drag queens") were not something that a child should be subjected to, and the Court finds this as a fact.

37. That the minor child Joey on one or more occasions observed the Defendant and Tipton in bed together.

38. That the two minor children never have friends stay over night while they are residing with the Defendant.

. . . .

43. Uncontroverted evidence was presented that on at least two (2) occasions the Defendant struck the minor child Joey on or about the head, and accordingly the Court makes this as a finding of fact.

44. That on the 27th day of February, 1993, the Plaintiff married William Pulliam.

45. That evidence was presented which indicated that the two minor children have friends in Wichita, Kansas as well as friends in Henderson County, accordingly the Court makes this as a finding of fact.

46. The children spend about two (2) months every summer with the Plaintiff in Wichita, Kansas since the entry of the California Judgment.

47. At the house in Henderson County the children had separate beds in the same bedroom. That the two minor children have separate beds in the same bedroom at the Plaintiff's home in Wichita, Kansas. Furthermore, the Plaintiff's residence in Wichita, Kansas is of ample size for the two minor children.

48. The Plaintiff has in the past during the summer visitations taken more than adequate care of the two minor children.

49. That from the evidence presented the Court would find that the Defendant's conduct is not fit and proper and will expose the (2) minor male children to unfit and improper influences.

. . . .

53. The activity of the Defendant will likely create emotional difficulties for the two minor children. That evidence was presented that the minor child Joey cried when he was told by the Defendant that he (Defendant) was homosexual. This evidence leads the Court to find that the minor child Joey may already be experiencing emotional difficulties because of the active homosexuality of the Defendant. Furthermore the Court finds that it is likely that the minor child Kenny will also experience emotional difficulties because of the active homosexuality of the Defendant.

54. That the active homosexuality of the Defendant and his involvement with Tim Tipton by bringing Tim Tipton into the home of the two minor children is detrimental to the best interest and welfare of the two minor children.

55. The Plaintiff is presently in a position to provide an environment more suitable to the two minor children's physical and emotional needs.

Based on such findings of fact, the trial court entered conclusions of law which included, *inter alia*, the following:

2. That since the entry of the California Judgment the Defendant is exposing the two minor children to conduct which is not fit and proper.

3. That since the California Judgment the Defendant is not providing a fit and proper environment in which to rear the two minor children.

4. That there has been a substantial change of circumstances since the entry of the California Judgment adversely affecting the two minor children or that will likely or probably adversely affect the two minor children.

5. That Plaintiff is a fit and proper person to exercise the exclusive care, custody, and control of the said two minor children. That it is in the minor children's best interest that the Plaintiff have exclusive[] care, custody and control of the minor children, subject to reasonable visitation privileges being awarded to the Defendant as hereinafter set out.

Based upon its findings of fact and conclusions of law, the trial court ordered that plaintiff-mother be awarded the exclusive care, custody and control of the two minor children. Defendant-father was granted one month of visitation during the summers and was directed by the trial court not to allow the boys to live in the same house with Mr. Tipton.

Defendant-father appealed to the Court of Appeals, which held that the findings upon which the trial court based its determination that there had been a change in circumstances adversely affecting the welfare of the children were either speculative or not supported by evidence in the record. The Court of Appeals reversed the trial court. For the reasons stated herein, we reverse the decision of the Court of Appeals.

Since this is a case involving modification of a custody order entered with the consent of both parties by a court in California, the controlling statute is N.C.G.S. § 50-13.7. That statute provides in pertinent part:

[W]hen an order for custody of a minor child has been entered by a court of another state, a court of this State may, upon gaining jurisdiction, and a showing of changed circumstances, enter a new order for custody which modifies or supersedes such order for custody.

N.C.G.S. § 50-13.7(b) (1995).

It is a long-standing rule that the trial court is vested with broad discretion in cases involving child custody. *In re Custody of Peal*, 305

N.C. 640, 645, 290 S.E.2d 664, 667 (1982). The Court of Appeals correctly explained the rationale for this rule when it stated:

> "[The trial court] has the opportunity to see the parties in person and to hear the witnesses, and [its] decision ought not be upset on appeal absent a clear showing of abuse of discretion." *Falls v. Falls*, 52 N.C. App. 203, 209, 278 S.E.2d 546, 551, *[disc. rev.] denied*, 304 N.C. 390, 285 S.E.2d 831 (1981). "[The trial court] can detect tenors, tones, and flavors that are lost in the bare printed record read months later by appellate judges." *Newsome v. Newsome*, 42 N.C. App. 416, 426, 256 S.E.2d 849, 855 (1979).

*Surles v. Surles*, 113 N.C. App. 32, 36-37, 437 S.E.2d 661, 663 (1993) (first and third alterations in original). As a result, we have held that the trial court's "findings of fact have the force and effect of a verdict by a jury and are conclusive on appeal if there is evidence to support them, even though the evidence might sustain findings to the contrary." *Williams v. Pilot Life Ins. Co.*, 288 N.C. 338, 342, 218 S.E.2d 368, 371 (1975).

The basis for the Court of Appeals' reversal of the trial court's judgment ordering a change of custody was its conclusion that the evidence presented did not support some of the trial court's findings. It is the duty of the reviewing court to examine all of the competent evidence in the record supporting the trial court's findings and to then decide if it is substantial. *Thompson v. Wake County Bd. of Educ.*, 292 N.C. 406, 414, 233 S.E.2d 538, 544 (1977). However, in this case, the Court of Appeals did not afford sufficient weight and deference to the well-established law which severely limits appellate court review of custody orders, especially in the area of fact-finding. The Court of Appeals also failed to note competent, substantial, and critical evidence in the record tending to support the trial court's findings, conclusions, and order.

Where, as here, a case is tried without a jury, the fact-finding responsibility rests with the trial court. Absent a total lack of substantial evidence to support the trial court's findings, such findings will not be disturbed on appeal. The essential ingredient here is "substantial" evidence. The trial court's findings need only be supported by substantial evidence to be binding on appeal. We have defined "substantial evidence" as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *State v. Hill*, 347 N.C. 275, 301, 493 S.E.2d 264, 279 (1997) (quoting *State v.*

*Smith,* 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980)); *accord Thompson,* 292 N.C. at 414, 233 S.E.2d at 544.

Most of the trial court's findings of fact are uncontested. The remaining findings of the trial court are supported by substantial evidence.

With regard to findings of fact 49 and 54, uncontroverted evidence was presented that defendant-father and Mr. Tipton engaged in oral sex approximately once a week in the home with the children present. Defendant-father and Mr. Tipton intended to continue such homosexual activity in the home. Defendant-father saw nothing wrong with such conduct and would not counsel the two minor children that such conduct was improper.

Evidence was also presented tending to show that the children had seen the two men demonstrate physical affection, including kissing each other on the lips. This activity took place in the home in front of the children as the "provider" of this couple prepared to leave for work. The minor child Joey had observed his father and Mr. Tipton in bed together.

The evidence further tended to show that the door of the bedroom occupied by defendant-father and Mr. Tipton was directly across the hall and approximately three feet from the door to the children's bedroom. Defendant-father and Mr. Tipton testified that both their bedroom door and the children's bedroom door were open at all times, except when the two men engaged in sexual activity. Further, testimony tended to show that the children went in and out of the two men's bedroom at will, often during the night when the two men were in bed together.

Defendant testified that he had told the children that society was not accepting of such a homosexual relationship. There was also evidence that Mr. Tipton kept photographs of "drag queens" in the home, despite his admission that the children should not be exposed to such material. Further, evidence was presented that Mr. Tipton had, on at least one occasion, taken the children away from the home without defendant's knowledge of their whereabouts.

The foregoing evidence was admitted by the trial court and was not disputed by defendant. This evidence was substantial evidence and clearly supports findings of fact 49 and 54. We conclude that activities such as the regular commission of sexual acts in the home

PULLIAM v. SMITH

[348 N.C. 616 (1998)]

by unmarried people, failing and refusing to counsel the children against such conduct while acknowledging this conduct to them, allowing the children to see unmarried persons known by the children to be sexual partners in bed together, keeping admittedly improper sexual material in the home, and Mr. Tipton's taking the children out of the home without their father's knowledge of their whereabouts support the trial court's findings of "improper influences" which are "detrimental to the best interest and welfare of the two minor children."

We do not agree with the conclusion of Justice Webb's dissent that the only basis upon which the trial court changed custody was that the defendant is a "practicing homosexual." Instead, we conclude that the trial court could and did order a change in custody *based in part* on proper findings of fact to the effect that defendant-father was regularly engaging in sexual acts with Mr. Tipton in the home while the children were present and upon other improper conduct by these two men. The trial court did not rely on the mere fact that defendant is a homosexual or a "practicing homosexual." Nor does this Court hold that the mere homosexual status of a parent is sufficient, taken alone, to support denying such parent custody of his or her child or children. That question is not presented by the facts of this case. Although the trial court might have worded findings 49 and 54 better or more fully, they are nonetheless supported by substantial uncontroverted evidence. Therefore, they were binding on the Court of Appeals and are binding on this Court.

With regard to finding of fact 53, evidence was presented that when Joey was told that defendant-father was involved in a homosexual relationship, Joey was emotionally distraught, covering his face with his hands and running into the bathroom. Later, Joey cried, grasped onto his mother, and asked his mother to get him out of defendant's home. Evidence was also presented that sometime thereafter, Joey told his stepfather, William Pulliam, that he wanted his mother to come and get him and take him to Wichita where she lived. Further, evidence was presented that Joey expressed confusion over defendant's homosexual relationship with Mr. Tipton by asking Mr. Tipton if he was Joey's stepfather.

The trial court could reasonably find from this substantial evidence, as well as the other evidence discussed above, that "[t]he activity of the Defendant will likely create emotional difficulties for

**PULLIAM v. SMITH**

[348 N.C. 616 (1998)]

the two minor children." Although the trial court might have worded finding of fact 53 differently, it is nonetheless supported by substantial evidence and is binding on the Court of Appeals and this Court.

Substantial evidence supports all of the above-quoted findings of the trial court. Because these findings are sufficient to support the trial court's conclusions, which in turn justify a change of custody, we conclude that the trial court did not err.

The judgment of the trial court was proper, and the decision of the Court of Appeals to the contrary was in error. The decision of the Court of Appeals must be and is reversed, and this case is remanded to that court for its further remand to the District Court, Henderson County, for reinstatement of the judgment of the trial court.

REVERSED AND REMANDED.

Justice WEBB dissenting.

I dissent. I do not believe the evidence supports a finding that there had been a substantial change in circumstances affecting the welfare of the children so that the custody could be changed.

The majority begins its opinion by saying this Court has never required a party seeking a change in custody to show there has been a change in circumstances adversely affecting the child. The majority then overrules *Thomas v. Thomas*, 259 N.C. 461, 130 S.E.2d 871 (1963), and eighteen Court of Appeals cases which hold otherwise. We may want to change the law as to the showing necessary to change custody, but if we do so I suggest we do it forthrightly. I note that in this case the majority relies on a change in circumstances which adversely affects the children to affirm the change in custody.

The majority relies first on findings of fact 49 and 54 to hold that the district court found facts sufficient to justify a change in custody. In these two findings, the district court found only that the defendant is a practicing homosexual and this creates an unfit and improper environment for the children. I do not believe the fact, standing alone, that defendant is a practicing homosexual, is sufficient to support a conclusion that this shows an improper environment which justifies a change in custody.

The majority also relies on finding of fact 53, in which the district court speculated on the possibility that their father's homosexuality

**PULLIAM v. SMITH**

[348 N.C. 616 (1998)]

will likely create emotional difficulties for the two children. The only evidence that the children actually suffered emotional difficulties was testimony that the older child, when he was told his father was homosexual, cried and asked his mother to remove him from his father's home. This child said at the hearing that he had no preference as to which of the parties was given custody. All the evidence showed the children were well adjusted. They had good attendance records in school and maintained average to above average grades. There was not substantial evidence to support a finding of fact that the defendant's homosexuality will likely create emotional difficulties for the two children.

The difficulty with the majority opinion for me is that it recites actions by the defendant which the majority considers to be distasteful, immoral, or even illegal and says this evidence supports findings of fact which allow a change in custody. There is virtually no showing that these acts by the defendant have adversely affected the two children. The test should be how the action affects the children and not whether we approve of it. I believe the evidence shows only that the defendant is a practicing homosexual without showing any harm has been inflicted on the children by this practice. I do not believe we should allow a change in custody on evidence which shows only that the defendant is a practicing homosexual.

Justice ORR concurring in the result.

N.C.G.S. § 50-13.7(b) provides that "when an order for custody of a minor child has been entered by a court of another state, a court of this State may, upon gaining jurisdiction, *and a showing of changed circumstances*, enter a new order for custody which modifies or supersedes such order for custody." N.C.G.S. § 50-13.7(b) (1995) (emphasis added). The statutory language does not use the word "substantial" in describing change of circumstances nor does the statute use the phrase "affecting the child's welfare." Both "substantial" and "affecting the child's welfare" have been added by judicial decisions and represent a commonsense interpretation of the legislative intent.

As I read the intent of the legislature in its passage of N.C.G.S. § 50-13.7(b), the trial court would first determine whether a change of circumstances had occurred since the entry of the original custody order and then determine whether the change of circumstances is

substantial and has some rational relationship to the polar star issue in all custody determinations, i.e., the welfare of the child.[2]

In other words, the first factor to be considered in evaluating a change of circumstances is whether it is substantial. By this, we mean not inconsequential or minor but instead a change that is significant. Next, the trial court should evaluate whether the change "affects the welfare of the child." By this, we mean that the changes are of the type which normally or usually affect a child's well-being—not a change that either does not affect the child or only tangentially affects the child's welfare.

It is unnecessary at this stage to determine the quantitative or qualitative degree of effect on a child's welfare. As a practical matter, it may be difficult, if not impossible, to determine how a significant change of circumstances is currently or in the long-term going to affect a child's welfare. Upon determining that the requirement of N.C.G.S. § 50-13.7(b) has been met, the trial court would then be required to consider modification of custody by applying the best interest of the child test.

Here, there is little, if any, dispute that the father's acknowledgment that he is homosexual and that his companion and admitted lover's moving into the home with the boys constitutes a substantial change of circumstances as envisioned by N.C.G.S. § 50-13.7(b). Obviously, conditions in the home are dramatically different from when the original custody order was entered. Once the trial court reaches the conclusion that there has been a substantial change of circumstances, it is not necessary, as the Court of Appeals believed, for the trial court to make findings as to adverse (or beneficial) effects, but only that the substantial change affects the welfare of the child. Here, there seems little room for argument that the new living arrangement and the father's new lifestyle will have some effect on the boys and their well-being. It was erroneous to require a showing of harm to the children in reaching such a conclusion. Since there was evidence in the record from which the trial court could find that the change of circumstances was substantial and affected the boys' welfare, the trial court then was required to reopen the custody issue and determine what was in the best interest of the boys.

2. I would disavow the test first set forth in *Rothman v. Rothman*, 6 N.C. App. 401, 406, 170 S.E.2d 140, 144 (1969), and followed in *Ramirez-Barker v. Barker*, 107 N.C. App. 71, 77, 418 S.E.2d 675, 678-79 (1992), that "[i]n order for a change in circumstances to be substantial, '[i]t must be shown that circumstances have so changed that the welfare of the child will be adversely affected unless the custody provision is modified.' "

As to the ultimate disposition of this case, there is evidence in the record from which the trial court could find and ultimately conclude that it was in the best interest of the children to change custody. "[T]he trial judge's findings of fact in custody Orders are binding on the appellate courts *if supported by competent evidence." Blackley v. Blackley*, 285 N.C. 358, 362, 204 S.E.2d 678, 681 (1974).

> In determining the best interest of the child, the trial court should consider a number of factors, too numerous to be named here. . . .
>
> Whenever the trial court is determining the best interest of a child, any evidence which is competent and relevant to a showing of the best interest of that child must be heard and considered by the trial court, subject to the discretionary powers of the trial court to exclude cumulative testimony.

*In re Shue*, 311 N.C. 586, 597, 319 S.E.2d 567, 574 (1984).

> However, there is no burden of proof on either party on the "best interest" question. Although the parties have an obligation to provide the court with any pertinent evidence relating to the "best interest" question, the trial court has the ultimate responsibility of requiring production of any evidence that may be competent and relevant on the issue. The "best interest" question is thus more inquisitorial in nature than adversarial.

*Ramirez-Barker*, 107 N.C. App. at 78, 418 S.E.2d at 679 (citation omitted). In applying the best-interest test, the trial court is vested with broad discretion, and its decision cannot be overturned absent a showing of an abuse of discretion. *In re Custody of Peal*, 305 N.C. 640, 645-46, 290 S.E.2d 664, 667 (1982). Here, despite conclusory aspects of the trial court's order which were unnecessary, I cannot say that the trial court's decision that it was in the best interest of these young boys to now live with their mother and stepfather was an abuse of discretion.

I acknowledge that our case law has emphasized the importance of stability in custody cases and that continual reopening of the issue is harmful to the child. However, I am convinced that the test articulated in this concurring opinion does not substantially create a problem, and, if so, it must be balanced against the Court's ultimate responsibility to do what is in the child's best interest. *Shepherd v. Shepherd*, 273 N.C. 71, 75, 159 S.E.2d 357, 361 (1968). The party moving for modification of the original custody order must demonstrate

that a *substantial* change in circumstances has occurred that affects the child's welfare. Obviously, this burden is necessary to promote stability in custody orders and discourage frequent petitions for modification of custody decrees. I believe this test will still serve to protect the custodial parent from harassment by repeated litigation and protect the child from being in the midst of ongoing custody battles.

As Justice Ervin said almost fifty years ago: "It may be well to observe, in closing, that the law is realistic and takes cognizance of the ever changing conditions of fortune and society. While a decree making a judicial award of the custody of a child determines the present rights of the parties to the contest, it is not permanent in its nature, and may be modified by the court in the future as subsequent events and the welfare of the child may require." *Hardee v. Mitchell*, 230 N.C. 40, 42, 51 S.E.2d 884, 885-86 (1949).