IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-1032

Filed 6 August 2024

Cumberland County, No. 22 CVD 907

BREAL MADISON, III, Plaintiff,

v.

ABIGAIL GONZALEZ-MADISON, Defendant.

Appeal by plaintiff from order entered 16 June 2023 by Judge Stephen C. Stokes in Cumberland County District Court. Heard in the Court of Appeals 12 June 2024.

> *Tharrington Smith, LLP, by Jaye Meyer and Sarah Izzell-Cutler, for plaintiff-appellant.*

> *The Law Office of Michael A. Simmons, PLLC, by Michael A. Simmons, for defendant-appellee.*

DILLON, Chief Judge.

In this appeal, Plaintiff Breal Madison, III, ("Father") appeals the trial court's order granting primary physical care, custody, and control to Defendant Abigail Gonzalez-Madison ("Mother").

I. Background

Father and Mother (collectively, "Parents") are both active-duty members of the United States Army. In 2019, they became the biological parents of minor child

Liam while both were stationed at Ft. Bragg.[1]  Parents separated following Liam's birth and consented to a temporary custody order, granting Parents joint legal and physical custody.

In 2022, both Parents were re-stationed in Hawaii.  Father moved to Hawaii in February.  Three months later, in May, Mother and Liam moved to Hawaii.

In February 2023, while in Hawaii, the trial court in Cumberland County held a Webex hearing to determine permanent custody.  In June 2023, the trial court entered an order granting Parents joint legal custody of Liam, but awarded Mother primary physical care, custody, and control of Liam.  Father appeals.

## II.    Analysis

"It is a long-standing rule that the trial court is vested with broad discretion in cases involving child custody."  *Pulliam v. Smith*, 348 N.C. 616, 624, 501 S.E.2d 898, 902 (1998).  "This discretion is based upon the trial court's opportunity to see the parties; to hear the witnesses; and to detect tenors, tones, and flavors that are lost in the bare printed record read months later by appellate judges."  *Shipman v. Shipman*, 357 N.C. 471, 474, 586 S.E.2d 250, 253 (2003) (cleaned up).  Accordingly, we review a trial court's custody determination for an abuse of discretion, meaning that a trial court's decision must "be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned

---

[1] Pseudonym used for protection of the minor child's identity.

decision." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).

Father makes three arguments on appeal, which we address in turn.

A.  Best Interest Determination

First, Father contests the trial court's determination that it is in Liam's best interest for Mother to have primary physical custody.

> Before awarding primary physical custody of a child to a particular party, the trial court must conclude as a matter of law that the award of custody to that particular party will be in the best interest of the child.  Such a conclusion must be supported by findings of fact.  These findings may concern physical, mental, or financial fitness or any other factors brought out by the evidence and relevant to the issue of the welfare of the child.

*Hall v. Hall*, 188 N.C. App. 527, 532, 655 S.E.2d 901, 905 (2008) (internal marks omitted).  In child custody cases, the trial court has "broad discretion as to which facts to consider and how much weight to accord them."  *In re A.K.*, 360 N.C. 449, 456, 628 S.E.2d 753, 757 (2006).

Father points to several findings of fact which he believes show the "inevitable conclusion" that awarding him primary physical custody "would better promote the minor child's best interest."  For instance, the trial court made several findings regarding Parents' "notable communication issues" and appeared to suggest that Mother was at fault for those issues.  However, the court also found that "[n]otwithstanding the communications, Father and Mother have assisted each other in the care and custody of the minor child."  The trial court also made findings

regarding the interactions between Father and Liam. In particular, the trial court found that "Father retains a consistent daily routine of dropping off and picking up the minor child from daycare. Father enjoys date nights and extracurricular activities with the minor child to include reading, swimming, [and] going to the park." The trial court did not make comparable findings regarding Mother's routine and activities with Liam. And we note that Father showed a great involvement in Liam's speech therapy, with Father attending seventeen sessions and Mother attending only three sessions.

Accordingly, some of the trial court's findings of fact may suggest that it would be in the child's best interest for Father to have primary physical custody. Yet, other findings suggest that it would be in the child's best interest for Mother to have primary physical custody, such as the findings tending to show that Mother has greater financial resources to support Liam, that Mother has previously taken on the responsibility of physically caring for Liam full-time when her move to Hawaii was delayed, and that Mother has a live-in boyfriend who helps take care of Liam.

Here, the trial court had discretion to determine how much weight to give each finding of fact, and its best interest conclusion is supported by those findings of fact. Based on the record before us, therefore, we cannot say that the trial court abused its discretion in awarding primary physical care, custody, and control to Mother.

### B. "Self-Executing" Modification Provisions

Father contests provisions within the custody order which will not take effect,

if at all, until Parents, or either of them, are relocated by the Army from Hawaii.

At the time of the February 2023 custody hearing, Parents had several years left on their current military orders in Hawaii. The trial court found that each parent was expected to have a permanent change of station ("PCS") once his/her current assignment ended in 2025. Mother plans to remain in the Army but hopes to relocate closer to her family in Texas. Father may or may not have a PCS to the same location as Mother. The trial court ordered an alternative visitation schedule to commence, if at all, following either parent's PCS. This alternative schedule includes provisions that depend on Parents' physical proximity to each other (*e.g.*, whether Parents are living farther than 100 miles apart from each other).

We agree with Father that the trial court abused its discretion by including these "self-executing" modification provisions for the reasoning below.

A "self-executing" modification provision within a custody order is one which modifies the custody arrangement upon the occurrence of an event which may occur in the future. Several states have held that self-executing modification orders are generally illegal, at least one state has held them to be legal, and their legality is unclear in other states. *See generally* Helen R. Davis, *Self-Executing Modifications of Custody Orders: Are They Legal?*, 24 J. Am. Acad. Matrim. Laws. 53, 56 (2021).

Our Supreme Court has held that "the trial court is vested with broad discretion in cases involving child custody," *Pulliam*, 348 N.C. at 624, 501 S.E.2d at 902, and that "[a] trial court may be reversed for abuse of discretion only upon a

showing that its actions are manifestly unsupported by reason . . . [or] upon a showing that [its order] was so arbitrary that it could not have been the result of a reasoned decision," *White,* 312 N.C. at 777, 324 S.E.2d at 833.

That Court has also stated that "[a] judgment awarding custody is based upon the conditions found to exist *at the time it is entered* [and that the] judgment is subject to change as is necessary to make it *conform to changed conditions when they occur*." *Stanback v. Stanback,* 266 N.C. 72, 76, 145 S.E.2d 332, 335 (1965) (emphasis added).

Our Court has held that "evidence of speculation or conjecture that a detrimental change may take place sometime in the future will not support a change in custody." *Evans v. Evans,* 138 N.C. App. 135, 140, 530 S.E.2d 576, 579 (2000) (internal citations and quotations omitted).[2]

However, in 2015, our Court held that it was not an abuse of discretion by the trial court to include a provision in a custody order (entered when the child was under two years of age) which changed the father's visitation years in the future when the child entered kindergarten. *See Burger v. Smith,* 243 N.C. App. 233, 246–48, 776 S.E.2d 886, 895–96 (2015). We concluded that, based on the facts in that case, "rather than being arbitrary, the visitation schedule was an appropriate response to the parties' unusual living situation." *Id.* at 248, 776 S.E.2d at 895–96. We noted the

---

[2] We note that both detrimental and beneficial changes in circumstances may warrant a change in custody. *See Pulliam*, 348 N.C. at 620, 501 S.E.2d at 900 (disapproving of a line of Court of Appeals cases that "require[d] a showing of adversity to the child as a result of changed circumstances to justify a change of custody.").

father's argument that the future visitation schedule "may prove incompatible with" whatever the future might hold, such as the "extracurricular activities in which the child might participate" in high school. *Id.* at 248, 776 S.E.2d at 896. Addressing the father's concern, we reminded that if the future held something unexpected, the father could seek a modification based on the unexpected changed conditions. *Id.*

In the present case, though, the change of circumstances which may occur based on a PCS are much more speculative than that in *Burger*. Here, the trial court made a call regarding visitation in the future without knowing when either parent may be transferred from Hawaii or where either may be transferred or how far apart Mother and Father would be living from each other. A PCS could create either a slight change or a drastic change which could uproot Liam to *any* United States Army base. We, therefore, conclude the trial court abused its discretion by incorporating the "self-executing" provisions in its order, provisions which do not take effect until after either parent receives a PCS transferring him/her from Hawaii, where the time and place of such transfer is unknown. When a PCS order is received by either parent, the trial court may *at that time* consider the nature and particulars of the changed conditions occasioned by the PCS and determine *then* what custody arrangement would be in the best interest of the child. (Of course, either parent may seek a modification based on other changed circumstances as they may arise.)

### C. Decretal Paragraphs

Father contests several provisions in the decretal order. Specifically, he argues

that the trial court failed to make findings of fact or conclusions of law to support its judgment. *See Coble v. Coble*, 300 N.C. 708, 714, 268 S.E.2d 185, 190 (1980) ("Evidence must support findings; findings must support conclusions; conclusions must support the judgment.").

As we have concluded that the trial court erred in decreeing any change to take effect, if at all, post-PCS, we need not again address the decretal paragraphs addressing post-PCS custody/visitation. As to the other decretal provisions, we conclude the trial court did not abuse its discretion and affirm the order as to those provisions.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

Judges GORE and THOMPSON concur.